MILLER SHAH LLP
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
19712 MacArthur Blvd.
Irving, CA 92612
Telephone: (866) 545-5505
Facsimile: (866) 300-7367

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
E-mail: rkshelquist@locklaw.com
REBECCA A. PETERSON (SBN 241858)
E-mail: rapeterson@locklaw.com
MEGAN S. VAN DYKE
E-mail: msvandyke@locklaw.com
CATHERINE A. PETERSON
E-mail: capeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Jasmine Barnes, | Case No. 5:22-cv-00314-JGB-PLA |
| Plaintiff, | |
| v. | **AMENDED CLASS ACTION COMPLAINT FOR:** |
| Natural Organics, Inc., d/b/a NaturesPlus, | |
| Defendant. | (1) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT; (2) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW; (3) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW; (4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; (5) UNJUST ENRICHMENT; AND (6) FRAUD BY OMISSION. |
| | **[Demand for Jury Trial]** |

1

1.      Plaintiff Jasmine Barnes ("**Plaintiff**"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Natural Organics, Inc., d/b/a NaturesPlus®, ("**Defendant**"), for its knowing,   reckless, and/or intentional practice of failing to fully disclose the presence or risk of arsenic, cadmium, lead, or mercury (collectively "**Heavy Metals**") in its NaturesPlus Prenatal Vitamins ("**Products**" or "**Prenatal Vitamins**").[1] The Prenatal Vitamins are sold throughout the United States and do not conform to its packaging. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full and accurate disclosure of all dangerous substances in its marketing, advertising, and labeling, and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel, and as to all other matters, upon information and belief, Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE CASE

## I.   INTRODUCTION

2.      The significance of prenatal health is underscored by the words of Ian Donald, the obstetrician who developed ultrasound diagnostics in Europe during the twentieth century, when he stated: "The first 38 weeks of life spent in the allegedly protected

---

[1] "**Product**" or "**Prenatal Vitamin**" includes any prenatal product Defendant refers to as a supplement, multivitamin, multimineral, prenatal, or gummy, and collectively refers to any omissions regarding the risk of exposure to heavy metals and/or the presence of heavy metals of the following NaturesPlus products: Ultra Prenatal® Multivitamin Tablets; Source of Life® Prenatal Multivitamin Tablets; Source of Life® Liquid Prenatal Multivitamin; Source of Life® Garden Prenatal Multivitamin Tablets. Discovery may reveal additional products that contain levels of Heavy Metals.  Plaintiff reserves her right to include any such products in this action.

environment of the amniotic sac are medically more eventful and more fraught with danger than the next 38 years in the life span of most human individuals."[2]

3.      The importance of prenatal health has not gone unnoticed to expectant mothers or women who may become pregnant. And the prenatal vitamin market is capitalizing on the increased awareness.

4.      The North America Prenatal Vitamin market was valued at an estimated 200.47 million U.S. dollars ("**USD**") in the United States in 2020, and the market is expected to increase by almost USD 100 million in the next five years, reaching a market value of USD 293.6 million, by 2025.[3]

5.      The incredible rise in consumer demand for prenatal vitamins is due to "[t]he growing health awareness among pregnant women regarding proper diet."[4] Following a healthy diet and taking a nutritious prenatal vitamin are important to supporting the growth of the fetus and the mother's overall health.[5]

6.      The surge in sales of prenatal vitamins has also increased due to promotional initiatives by the market vendors, like Defendant.[6] "Prenatal vitamin supplements are

---

[2] Stephen J. Genuis, Rebecca A. Genuis, "Preconception Care: A New Standard of Care within Maternal Health Services", *BioMed Research International*, vol. 2016, Article ID 6150976, 30 pages, 2016.  *Available   at* https://doi.org/10.1155/2016/6150976  (last accessed January 3, 2022).

[3] North America Prenatal Vitamins Supplement Market, Market Data Forecast, *available at* https://www.marketdataforecast.com/market-reports/na-prenatal-vitamins-supplements-market (last accessed January 3, 2022) ("Vitamins Supplement Market Data Forecast").

[4] *Id.*

[5] The American College of Obstetricians and Gynecologists, "Nutrition During Pregnancy FAQs," updated March 2021, *available at* https://www.acog.org/womens-health/faqs/nutrition-during-pregnancy (last accessed January 3, 2022) ("Nutrition During Pregnancy").

[6] *Vitamins Supplement Market Data Forecast, supra.*

gaining popularity in the market due to aggressive promotion and enhanced sales channels increasing accessibility to the consumers."[7]

7.     Given the importance of prenatal vitamins to the mother's and baby's health, women like Plaintiff who are pregnant or may become pregnant, trust Defendant to sell prenatal vitamins that are natural, nutritious, and nurturing of a healthy pregnancy, and that are free from harmful toxins, contaminants, and chemicals, such as Heavy Metals.

8.     However, unbeknownst to women like Plaintiff, Defendant's Prenatal Vitamins contain, or have a material risk of containing, dangerous substances in the form of Heavy Metals.

## II.     HEAVY METALS

9.     Defendant fails to disclose to consumers that the Prenatal Vitamins contain or risk containing Heavy Metals. Nowhere on the Prenatal Vitamins' packaging is it disclosed that they contain, or risk containing, Heavy Metals (hereinafter collectively referred to as "**Omissions**").

10.     The Prenatal Vitamins' packaging does not include any type of disclaimer or disclosure regarding the presence or risk of Heavy Metals that would inform consumers of their presence. Likewise, there is nothing on the packaging stating that Heavy Metals can be unsafe or accumulate over time in developing babies resulting in developmental issues, poisoning, injury, and/or disease due to a developing baby's exposure.

11.     Instead, Defendant chooses to focus on promoting its Prenatal Vitamins as natural, nutritious, and nurturing of a healthy pregnancy to justify a premium price.

12.     Consumers like Plaintiff expect the prenatal vitamins they consume to be free from Heavy Metals.

13.     Consumers like Plaintiff lack the scientific knowledge necessary to determine whether the Defendant's Products do in fact contain Heavy Metals or to know or ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers

---

[7] *Id.*

therefore must and do rely on Defendant to honestly report what its Products contain, especially as it pertains to the disclosure of Heavy Metals.

14.    Exposure to Heavy Metals has significant and dangerous health consequences. A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("**Congressional Committee Report**") highlighted the risk of including Heavy Metals in baby food, spurred by the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development."[8]

15.    The risk of harm to babies exposed to Heavy Metals starts even before birth, when the baby is developing in-utero. If an expectant mother is taking a vitamin with Heavy Metals, those Heavy Metals will cross the placenta, contaminating the child's development and causing adverse health effects.[9] "The toxicological effects of heavy metals could alter the physiological changes during pregnancy, the critical phase of fetal cell division and

---

[8]U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury," February 4, 2021, *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20 ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed January 3, 2022) ("Congressional Committee Report"). *See also* U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods," September 29, 2021, *available at* https://oversight.house.gov/sites/ democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%20 9.29.21%20FINAL.pdf (last accessed January 9, 2022).

[9] Wai, K. M., Mar, O., Kosaka, S., Umemura, M., & Watanabe, C. (2017). Prenatal Heavy Metal Exposure and Adverse Birth Outcomes in Myanmar: A Birth-Cohort Study. *International journal of environmental research and public health*, *14*(11), 1339. *Available at* https://doi.org/10.3390/ijerph14111339 (last accessed January 3, 2022).

differentiation."[10] Chronic low dose and consistent exposure to Heavy Metal toxicity to an infant during pregnancy can result in preterm delivery, stillbirth, or miscarriage.[11]

16.     Exposure to Heavy Metals during pregnancy may also lead to negative health outcomes in early childhood and beyond.[12] After birth, the Heavy Metal exposure can result in the child developing behavioral and neurocognitive conditions including autism or Attention-Deficit/Hyperactivity Disorder ("**ADHD**").[13]

17.     Provided the risk of harm to a child in-utero from Heavy Metal exposure, Defendant knows that its customers trust the quality of its Products and expect Defendant's Products to be free of Heavy Metals. Defendant also knows that certain consumers seek out and wish to purchase prenatal vitamins that possess high quality ingredients free of toxins, contaminants, or chemicals. Additionally, Defendant knows that these consumers will pay the price premium for prenatal vitamins they believe possess these qualities.

18.     As such, Defendant's packaging on its Prenatal Vitamins is intended to, and does, convey to consumers that its Prenatal Vitamins possess certain qualities and characteristics that support a mother's and developing baby's health while failing to disclose the inclusion or risk of inclusion of Heavy Metals.

19.     No reasonable consumer seeing Defendant's packaging would expect the Prenatal Vitamins to contain or have the risk of containing Heavy Metals. Furthermore, reasonable consumers, like Plaintiff, would consider the mere inclusion, or risk of inclusion, of Heavy Metals a material fact when shopping for a nutritious prenatal vitamin.

20.     Defendant intends for consumers to rely on its Omissions, and reasonable consumers did in fact so rely. However, Defendant's Omissions are deceptive, misleading,

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] ADHD and Autism Associated with In-Utero Heavy Metals and Essential Minerals, NeuroscienceNews.com, April 9, 2021, *available at* https://neurosciencenews.com/asd-adhd-heavy-metals-18207/ (last accessed January 3, 2022).

unfair, and/or false because the Prenatal Vitamins include or risk including undisclosed Heavy Metals.

21.     Defendant's Prenatal Vitamins do not have a disclaimer regarding the presence or risk of Heavy Metals that would inform consumers that the Products contain, or risk containing, Heavy Metals and/or that Heavy Metals can accumulate over time in a developing child's body to the point where negative health outcomes can occur.

## III.   DEFENDANT'S OMISSIONS ON THE PACKAGING OF ITS PRENATAL VITAMINS IS THE BASIS FOR THIS ACTION

22.     Defendant's deceptive packaging of the Prenatal Vitamins omitted the presence or risk of Heavy Metals to capitalize on, and reap enormous profits from, consumers who paid the price premium for its Prenatal Vitamins that were not sold as advertised. Defendant continues to wrongfully induce consumers to purchase its Prenatal Vitamins that are not as advertised.

23.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's Prenatal Vitamins.

## JURISDICTION AND VENUE

24.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act of 2005 ("**CAFA**"), 28 U.S.C. §1332(d)(2), for the following reasons: (a) some of the class members are citizens of a state that is different from the citizenship of the Defendant; (b) the putative class size is greater than 100 persons; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary defendants do not include States, State officials, and/or other governmental entities against whom the district court may be foreclosed from ordering relief.

25.     This Court has original jurisdiction over this action under CAFA, 28 U.S.C. §1332(d), because, upon information and belief, no other class action has been filed asserting the same or similar factual allegations against the defendants on behalf of the same or other persons during the 3-year period preceding the filing of this class action.

**General Personal Jurisdiction**

26.     This Court has personal jurisdiction over Plaintiff, Jasmine Barnes, who is a resident of the State of California.

27.     This Court has both general and specific personal jurisdiction over the Defendant, Natural Organics, Inc., d/b/a NaturesPlus.

28.     This Court has general personal jurisdiction over Defendant, Natural Organics, Inc., d/b/a NaturesPlus, because Defendant is registered to conduct business in California.

29.     This Court has general personal jurisdiction over Defendant, Natural Organics, Inc., d/b/a NaturesPlus, because the Defendant advertises, markets, and sells its parental vitamin products in California, accepts money from purchasers located in California, has engaged in systematic and continuous business activities in California, transacted substantial business with California entities and residents, and generally has sufficient minimum contacts in California to satisfy the Due Process Clause of the California Constitution and California's Long Arm Statute pursuant to California Code of Civil Procedure §410.10.

**Specific Personal Jurisdiction**

30.     This Court has specific personal jurisdiction over Defendant arising from Defendant's advertising, marketing, and sale of NaturesPlus prenatal vitamin products in California, which at all relevant times, included or risked including dangerous substances, all of which have caused harm in California as a result of the specific business activities complained of herein, either directly or through Defendant's agents.

31.     This Court has specific persona jurisdiction over Defendant because the advertising, marketing, and sale of NaturesPlus prenatal vitamin products, which omitted the inclusion or risk of inclusion of Heavy Metals, occurred in parts of California that are located in the Central District of California.

32.     Venue is proper in the Central District of California under 28 U.S.C. §1391(b)(2) because Plaintiff, Jasmine Barnes, resides in the Central District of California, and ingested the NaturesPlus prenatal vitamin products at issue within the confines of this District.

33.     Venue is proper in the Central District of California under 28 U.S.C. §1391(b)(1)&(2) and 28 USC §1391(d) because Defendant regularly conducts substantial business within the Central District of California.

34.     Venue is also proper in the Central District of California under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or Omissions giving rise to Plaintiff's claims occurred in this District, namely Defendant's advertisements, sales, and marketing of NaturesPlus prenatal vitamin products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## THE PARTIES

35.     Plaintiff Jasmine Barnes is, and at all times relevant hereto has been, a citizen of Riverside, California, located in the county of Riverside.  She purchased the Prenatal Vitamins for her pregnancy at Riteaid in Riverside, California.  Plaintiff last purchased and took the Prenatal Vitamins from approximately October 2019 to February 2020.

36.     During the time Plaintiff purchased and took the Prenatal Vitamins, and due to the    false and misleading claims and Omissions by Defendant, Plaintiff believed she was taking prenatal vitamins to give her body the nutrients needed for a healthy pregnancy. Plaintiff was unaware the Prenatal Vitamins contained or had the material risk of containing undisclosed levels of Heavy Metals. Plaintiff would not have purchased the

Products if the levels, or material risk of levels, of Heavy Metals had been disclosed and represented.

37.     As the result of Defendant's intentionally, recklessly, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the price premium for the Prenatal Vitamins that did not deliver what they promised.  She paid the price premium on the assumption that the labeling of the Prenatal Vitamins was accurate, that they did not contain or risk containing undisclosed levels of Heavy Metals and were safe to ingest. Plaintiff would not have paid this money had she known that the Prenatal Vitamins contained, or risked containing, levels of Heavy Metals.  Further, should Plaintiff encounter the Prenatal Vitamins in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Products. Plaintiff would  purchase these Products in the future if she can be assured that, so long as the Prenatal Vitamins are as advertised: natural, nutritious, and nurturing of a healthy pregnancy, and do not contain or risk containing Heavy Metals. Damages can be calculated through expert testimony at trial.

38.     Defendant Natural Organics, Inc., d/b/a NaturesPlus, is incorporated under the laws of the state of New York. Defendant's principal office or place of business is located at 548 Broadhollow Road, Melville, New York, 11747-3708. Defendant is responsible for the marketing, distribution, and sale of the Prenatal Vitamins under the NaturesPlus name to millions of consumers throughout the United States, including this District.  Defendant created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for its Prenatal Vitamins that did not disclose the presence of Heavy Metals. Defendant is also responsible for sourcing ingredients, manufacturing the Products, and conducting all relevant quality assurance protocols, including testing of both the ingredients and finished Prenatal Vitamins.

39.     Plaintiff relied upon the material Omissions missing from the Prenatal Vitamins' packaging which was prepared, reviewed, and/or approved by Defendant and its

agents at their headquarters and disseminated by Defendant and its agents through packaging that contained the Omissions. The Omissions were nondisclosed material content that a reasonable consumer would consider in purchasing the Prenatal Vitamins.

40.    Defendant manufactures, markets, advertises, packages, and labels several prenatal vitamin products. Defendant's Prenatal Vitamins include, but are not limited to:[14]

(a)    NaturesPlus Ultra Prenatal® Multivitamin Tablets:

 

---

[14] As stated *supra*, discovery may reveal additional products that also contain levels of Heavy Metals.  Plaintiff reserves the right to include any such products in this action. Plaintiff reserves the right to amend and/or supplement the labels included in the Complaint in accordance with applicable Federal and California law.

(b)     NaturesPlus Source of Life® Prenatal Multivitamin Tablets:



(c)     NaturesPlus Source of Life® Liquid Prenatal Multivitamin:



12

(d)     NaturesPlus Source of Life® Garden Prenatal Multivitamin Tablets:



## FACTUAL ALLEGATIONS

**I.   DEFENDANT'S   MARKETING   PRACTICES   EMPHASIZED   ITS
PRENATAL VITAMINS AS NATURAL AND HIGH QUALITY**

41.    Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Prenatal Vitamins throughout this District and the United States, and its Products are widely advertised and available at numerous retail and online outlets. Defendant markets its Products as natural and high quality products for consumers.

42.     Defendant's Prenatal Vitamins are advertised with the "NaturesPlus" brand to reflect and imply that the Products are natural. "NaturesPlus" is placed on all of Defendant's NaturesPlus Products, including the Prenatal Vitamins.

  

 

43.    Defendant's Prenatal Vitamins' packaging includes the images of fruits and vegetables, with a "Source of Life®" and a "Garden" brand variety to further represent the Products are natural and that they are nutritious.

 

44.    Defendant's Prenatal Vitamins are a "natural supplement for all phases of pregnancy."[15]



---

[15]https://www.amazon.com/Natures-Plus-Ultra-Prenatal-Multivitamin/dp/B000UWGQ8S (last accessed January 3, 2022)

45.     Defendant labels its Products as "high potency."



46.     On its website, Defendant proclaims to consumers that it is "bringing you high-quality products with the guaranteed potency you deserve!"[16]

47.     Defendant also declares as one of its "five core values" that it "continually strive[s] to create innovative, cutting-edge products that not only meet our customers' needs, but far exceed them."[17]

48.     Defendant touts as one of its "values" its credibility and trust, stating that "For nearly 50 years, we have cultivated trust by paying authentic attention to quality: Guaranteeing that every NaturesPlus product contains everything we say it does—every time."[18]

---

[16] https://naturesplus.com/pages/np-family (last accessed February 7, 2022).

[17] https://naturesplus.com/pages/our-values (last accessed February 7, 2022).

[18] *Id.*

49.     Another "value" of Defendant's is that it is "Committed"—that is, Defendant is "committed to bringing consumers smart, high-quality formulations" and its Products are "Manufactured with LOVE" as a way of "guaranteeing that [its] products will live up to the quality you expect."[19]



**Committed**

We are committed to bringing consumers smart, high-quality formulations in a timely manner. What's more, we base our supplements on solid research and high formulation standards…that's why every bottle of NaturesPlus product says, "Manufactured with LOVE." It's just our way of guaranteeing that our products will live up to the quality you expect.

50.     Defendant also values taking consumers "needs for reliable, effective supplements seriously."[20]

**Caring**

We care deeply about people and their nutritional well-being. That's why we take your needs for reliable, effective supplements seriously.

51.     With Defendant's branding as a natural supplement to support pregnancy, and its "five core values," and its guaranteeing of potent ingredients and striving to exceed customers' expectations, Defendant clearly recognizes the importance of its Prenatal Vitamins to the healthy development of a baby in-utero, including a woman's preparation to foster such development.

---

[19] *Id.*

[20] *Id.*

## II.    DEFENDANT'S SOURCING, MANUFACTURING, AND TESTING PROCEDURES PROVIDED IT WITH EXCLUSIVE KNOWLEDGE OF THE PHYSICAL AND CHEMICAL MAKE-UP OF ITS PRENATAL VITAMINS

52.    Defendant has, and had, exclusive knowledge of the physical and chemical make-up of its Prenatal Vitamins.

53.    Defendant's website describes its "Process" to becoming "one of the most trusted, iconic names in the world of dietary supplementation[]" as "being involved in and controlling the product development process every step of the way, from initial concept to market."[21]



How do you get to be one of the most trusted, iconic names in the world of dietary supplementation? By being involved in and controlling the product development process every step of the way, from initial concept to market.

54.    The first step in Defendant's five-step "Process" is "Conceptualization" in which Defendant conceptualizes and designs products "using safe and natural dietary means."[22]



**Step 1:** Conceptualization—Understanding Your Health Needs & Concerns

More energy, more sleep, less stress, weight management support—people are always looking for that extra edge so they can look and feel their best. What's more, people's health needs are constantly changing and evolving over time. That's where we come in: It's our job to stay on the pulse, conceptualizing and designing products that our customers need...using safe and natural dietary means.

---

[21] https://naturesplus.com/pages/the-process (last accessed February 7, 2022).

[22] *Id.*

55.    The second step is "Formulation" in which Defendant "comb[s] through hundreds of potential ingredients from dozens of suppliers […] mixing just the right ingredients in just the right amounts to produce just the right results."[23]

56.    Another step in Defendant's "Process" is "Manufacturing & Testing" during which "Each NaturesPlus product is produced in our own facilities, which are fully compliant with Good Manufacturing Practices (cGMPs)[,]" and "each [product] is tested in independent, third-party labs, which certify the product's identity, purity, and potency."[24]



**Step 2:** Formulation—Doing Our Homework & Scientific Research

Vitamins, minerals, botanical extracts: There's a wealth of natural health support out there. That's why when we set out to develop a supplement, we first comb through hundreds of potential ingredients from dozens of suppliers to find the ones perfectly suited for whatever need we're addressing along with the optimal delivery method.

Dietary supplementation is where science *meets* art—mixing just the right ingredients in just the right amounts to produce just the right results.

57.    Defendant's "Process" includes "Packaging & Label Design" in order to create packaging that protects products from "harmful factors" and to design "a clear label that resonates."[25]



**Step 3:** Packaging & Label Design

In order to guarantee the potency we are claiming on our labels we have to make sure the products are being packaged correctly. Each product will have different requirements in terms of protection from harmful factors such as exposure to air, light and moisture. That means having to determine what packaging will best safeguard a product's contents to ensure that potency and integrity are maintained.

Once the packaging has been determined, we then focus on designing a clear label that resonates, making sure to provide all the information you need in order to get the results you are looking for.

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

58.    Defendant also declares that its Source of Life® Prenatal Multivitamin is a "Certified Organic Gold Standard Whole Food Multivitamin."



59.    With its marketed testing and manufacturing procedures and standards, robust research practices, and claims of the "guaranteed" quality and "high" potency of its Products, Defendant clearly recognizes the importance of quality ingredients in its Prenatal Vitamins to the healthy development of a baby in-utero, including a woman's preparation to foster such development.



**Step 4:** Manufacturing & Testing

Our long experience in dietary supplementation really comes into play here. Each NaturesPlus product is produced in our own facilities, which are fully compliant with current Good Manufacturing Practices (cGMPs). What's more, each is tested in independent, third-party labs, which certify the product's identity, purity and potency.

### III.    DEFENDANT FAILS TO DISCLOSE THE PRESENCE OR RISK OF HEAVY METALS IN ITS PRENATAL VITAMINS

#### A. Defendant Falsely Marketed its Prenatal Vitamins by Omitting the Inclusion or Risk of Heavy Metals

60.    Defendant labels its Products as "For Pregnant and Nursing Mothers" and includes an image of an expectant mother nurturing her pregnant stomach.

 

61.    Defendant explains on its website to the consumer that part of its "Process" is "Packing and Labeling[,]" in which it makes "sure to provide all the information you need in order to get the results you are looking for."[26]

62.    Defendant explains on its website that its Products are "high-quality" with "guaranteed potency"[27] and "safe and natural."[28]

---

[26] *Id.*

[27] https://naturesplus.com/pages/np-family (last accessed February 7, 2022).

[28] https://naturesplus.com/pages/the-process (last accessed February 7, 2022).

63.     Based on Defendant's decision to advertise, label, and market its Prenatal Vitamins as natural, nutritious, and nurturing of a healthy pregnancy, consistent with the NaturesPlus brand, it had a duty to ensure that these statements were true and not misleading. As such, Defendant knew or should have known that the Prenatal Vitamins included, or risked including, nondisclosed levels of Heavy Metals, especially considering Defendant's statements on its website and labels and packaging.

64.     Defendant's marketing of its Products failed to disclose they contained or risked containing any level of Heavy Metals.

65.     Defendant intentionally omitted the inclusion or risk of inclusion of Heavy Metals in its Products in order to induce and mislead reasonable consumers to purchase its Prenatal Vitamins.

66.     As a result of Defendant's Omissions, a reasonable consumer would have no reason to suspect the presence, or risk, of undisclosed levels of Heavy Metals in the Products without conducting his or her own scientific tests or reviewing third party scientific testing of the Products.

**B. Due to the Presence or Risk of Heavy Metals in its Prenatal Vitamins, Defendant's Omissions are Misleading**

67.     At all times during the Class Period, Defendant knew or should have known the Prenatal Vitamins contained, or risked containing, Heavy Metals.  Defendant even touts its "Conceptualization," "Formulation," and "Manufacturing & Testing" to demonstrate its "being involved in and controlling the product development process every step of the way, from initial concept to market."[29]

68.     Plaintiff, through counsel, submitted a Freedom of Information Act ("**FOIA**") request to the Food and Drug Administration ("**FDA**") on March 8, 2021 asking for any test results or any records related to the levels of Heavy Metals in NaturesPlus prenatal

---

[29] https://naturesplus.com/pages/the-process (last accessed February 7, 2022).

vitamins. On July 28, 2021, the FDA responded that it did not have any records responsive to Plaintiff's request.

69.     Defendant's Prenatal Vitamins contained or risked containing Heavy Metals. Defendant was aware of this risk due to its proclaimed sourcing, manufacturing, and testing procedures, and Defendant failed to disclose it to Plaintiff and the Class.

70.     Defendant knew or should have known that Heavy Metals are potentially dangerous contaminants that pose health risks to humans, especially to women who are pregnant or may become pregnant and developing babies.

71.     Heavy Metal exposure can lead to catastrophic health consequences in a developing baby. The fetal development period from conception until birth is a phase of life that carries particular vulnerability to toxic exposure, including Heavy Metals, as developing babies have an immature detoxification capability.[30] Due to this vulnerable state, during this critical period, a child may amass higher levels of Heavy Metals and thus experience higher levels of toxic exposure than their mothers.[31] This exposure may lead to adverse consequences in pregnancy and the in-utero baby, including premature delivery, and the baby having a decreased birth weight, as well as smaller head and chest circumference, and a multitude of developmental and long-term health problems.[32] Prenatal exposure to Heavy Metals also negatively affects a child's neurodevelopment and may contribute to schizophrenia and dementia in adulthood.[33]

72.     Defendant knew or should have known it owed consumers a duty of care to prevent the presence or risk of Heavy Metals in its Prenatal Vitamins to the extent reasonably possible.

---

[30]Heavy metal contamination of prenatal vitamins, *available at* https://www.sciencedirect.com/science/article/pii/S2214750018301215?via%3Dihub (last accessed January 3, 2022) ("Heavy Metal Contamination of Prenatal Vitamins").

[31] *Id.*

[32] *Id.*

[33] *Id.*

73.     Defendant knew or should have known it owed consumers a duty of care to disclose the presence or risk of Heavy Metals in its Prenatal Vitamins.

74.     Defendant knew or should have known consumers purchased its Prenatal Vitamins based on the reasonable expectation that Defendant manufactured the Products to the highest standards. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Prenatal Vitamins to the highest standards for preventing the inclusion of Heavy Metals in the Products and for the testing for Heavy Metals in the Prenatal Vitamins' ingredients as well as the final Products.

### Heavy Metal Ingredient: Arsenic

75.     Defendant's Prenatal Vitamins contain, or have a risk of containing, Arsenic, which can cause cancer in humans, as well as diabetes and atherosclerosis, and potentially cardiovascular disease when ingested chronically.[34] Chronic exposure to Arsenic has also been associated with dermatological lesions and malignancies.[35]

76.     For children specifically, the World Health Organization ("**WHO**") has found that prenatal exposure to Arsenic through placental transfer, "can cause marked damage to the fetus[]" and increases the risk of detrimental effects throughout early childhood.[36] Exposure to Arsenic in-utero "has recently been associated with impact on genetic homeostasis with resulting inflammation and atherosclerotic disease adults."[37] Inorganic

---

[34] States JC, Singh AV, Knudsen TB, Rouchka EC, Ngalame NO, Arteel GE, et al. (2012) Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis. PLoS ONE 7(6): e38713. *Available at* https://doi.org/10.1371/journal.pone.0038713 (last accessed January 3, 2022) ("Prenatal Arsenic Exposure").

[35] Genuis SJ, Schwalfenberg G, Siy A-KJ, Rodushkin I (2012) Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations. PLOS ONE 7(11): e49676. *Available at* https://doi.org/10.1371/journal.pone.0049676 (last accessed January 3, 2022) ("Toxic Element Contamination of Natural Health Products").

[36] WHO, Adverse Health Effects of Heavy Metals in Children, *available at* https://www.who.int/ceh/capacity/heavy_metals.pdf (last accessed January 3, 2022).

[37] *Heavy metal contamination of prenatal vitamins, supra.*

Arsenic exposure in-utero is also linked to "impaired intellectual development, such as decreased performance on certain developmental tests that measure learning."[38] A developing baby's exposure to Arsenic also contributes to cardiovascular disease later in life.[39]

77.     Exposure cannot be undone, as "[t]here is no evidence that the harm caused by arsenic is reversible."[40] Moreover, Arsenic exposure may increase the mother's risk of nausea and vomiting during pregnancy, which may decrease maternal weight gain and lead to poor maternal nutrition.[41] A woman's blood Arsenic was also associated with decreased fetal growth.[42]

78.     Based on the risks associated with exposure to higher level of Arsenic, both the U.S. Environmental Protection Agency ("**EPA**") and FDA have set limits concerning the allowable limit of Arsenic at 10 parts per billion ("**ppb**") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a

---

[38] U.S. Food and Drug Administration, "Arsenic in Food and Dietary Supplements," current as of August 5, 2020, *available at* https://www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements (last accessed January 3, 2022) ("Arsenic in Supplements").

[39] *Prenatal Arsenic Exposure, supra.*

[40] Healthy Babies Bright Futures Report, What's in My Baby's Food, at 3, *available at* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFood Report_ENGLISH_R6.pdf (last accessed January 3, 2022) ("Healthy Babies Bright Futures Report").

[41] Estimating Effects of Arsenic Exposure During Pregnancy on Perinatal Outcomes in a Bangladeshi Cohort, Epidemiology, 2016 Mar; 27(2); 173-181, published online 2016 Feb 2, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4733817/ (last accessed January 3, 2022) ("Estimating Effects of Arsenic Exposure During Pregnancy").

[42] Claus Henn, B., Ettinger, A. S., Hopkins, M. R., Jim, R., Amarasiriwardena, C., Christiani, D. C., Coull, B. A., Bellinger, D. C., & Wright, R. O. (2016). Prenatal Arsenic Exposure and Birth Outcomes among a Population Residing near a Mining-Related Superfund Site. *Environmental health perspectives*, *124*(8), 1308–1315. *Available at* https://doi.org/10.1289/ehp.1510070 (last accessed January 3, 2022) ("Prenatal Exposure and Birth Outcomes").

maximum contaminant level).[43] The FDA has also set the maximum allowable levels in bottled water at 10 ppb of inorganic Arsenic.[44]

79.    Although the FDA has not set the action level for Arsenic in prenatal supplements specifically, "the FDA prioritizes monitoring and regulating products that are more likely to be consumed by very young children."[45] In that vein, the FDA issued guidance limiting the action level for Arsenic in infant rice cereals to 100 ppb.[46]

80.    Notwithstanding the establishment of action levels, Arsenic exposure may result in adverse outcomes during pregnancy and in the developing child.[47]

### Heavy Metal Ingredient: Cadmium

81.    Defendant's Prenatal Vitamins contain, or have a risk of containing, Cadmium, which is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[48] Moreover, the U.S. Department of Health and Human Services ("**HHS**") has determined that Cadmium is a probable human carcinogen.[49]

82.    Cadmium exposure during pregnancy can lead to detrimental outcomes. "Maternal exposure to [cadmium] has been associated with the delivery of low-birth weight

---

[43] *Arsenic in Supplements, supra.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Heavy metal contamination of prenatal vitamins, supra.*

[48] Genchi, G., Sinicropi, M.S., Lauria, G., Carocci, A., & Catalano, A., "The Effects of Cadmium Toxicity," International Journal of Environmental Research and Public Health, Review,   Published May 26, 2020, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7312803/#:~:text=Cadmium%20accumulates%20in%20plants%20and,%2C%20pancreas%2C%20and%20kidney%20cancers (last accessed January 3, 2022).

[49] Agency for Toxic Substances and Disease Registry, Public Health Statement, "Cadmium," (Sept. 2012), *available at* https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed January 3, 2022).

babies and an increase incidence of spontaneous abortion."[50] Cadmium may displace zinc, which is essential for normal fetal growth and development as well as maternal health during pregnancy.[51]

83.    Cadmium may seriously affect the morbidity and mortality of newborns in the first four weeks of their lives with far-reaching health consequences.[52] Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[53] Cadmium is also associated with decreases in IQ[54] and the development of ADHD.[55] Compounding the concern is that Cadmium has a prolonged half-life as it sequesters in body tissue.[56]

84.    Although the FDA has not set the maximum contaminant level for Cadmium in prenatal vitamins, the EPA has set a maximum contaminant level for Cadmium in drinking water of 5 ppb, 40 C.F.R. §141.62; the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[57]

---

[50] *Id.*

[51] *Id.*

[52] Ikeh-Tawari, E. P., Anetor, J. I., & Charles-Davies, M. A. (2013). Cadmium level in pregnancy, influence on neonatal birth weight and possible amelioration by some essential trace elements. *Toxicology international*, *20*(1), 108–112. *Available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3702118/ (last accessed January 3, 2022).

[53] *Healthy Babies Bright Futures Report at 14, supra.*

[54] "Cadmium exposure and cognitive abilities and behavior at 10 years of age: A prospective cohort study," Environment International, Vol. 113, April 2018, Pps. 259-268 *available at* https://www.sciencedirect.com/science/article/pii/S0160412017321025 (last accessed January 3, 2022).

[55] Lee, M. J., Chou, M. C., Chou, W. J., Huang, C. W., Kuo, H. C., Lee, S. Y., & Wang, L. J. (2018). Heavy Metals' Effect on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony. *International journal of environmental research and public health*, *15*(6), 1221. *Available at* https://doi.org/10.3390/ijerph15061221 (last accessed January 3, 2022).

[56] *Toxic Element Contamination of Natural Health Products, supra.*

[57] *Congressional Committee Report*, *supra*, at 29.

Regardless, Cadmium, like Lead, "displays a troubling ability to cause harm at low levels of exposure."[58]

### *Heavy Metal Ingredient: Lead*

85.     Defendant's Prenatal Vitamins contain, or have a risk of containing, Lead, which is a probable carcinogen[59] and developmental toxin known to cause health problems to children in-utero.[60] The Centers for Disease Control and Prevention ("**CDC**") reported that exposure to Lead in-utero can negatively affect the development of a baby's nervous system, decrease a baby's growth, and increase the risk for a baby being born premature and miscarriage.[61]

86.     Prenatal Lead exposure can seriously harm a baby's neurodevelopment, and is associated with a range of negative health outcomes such as schizophrenia and dementia, decreased cognitive performance, and reduced postnatal growth.[62] Prenatal exposures to the highest and lowest levels of Lead were linked to a heightened risk of autism spectrum diagnosis in children.[63] Additionally, studies have established a link between Lead exposure and ADHD.[64]

---

[58] *Healthy Babies Bright Futures Report* at 14*, supra.*

[59] American Cancer Society, "Known and Probable Carcinogens," Last Revised August 14, 2019, *available at* https://www.cancer.org/cancer/cancer-causes/general-info/known-and-probable-human-carcinogens.html (last accessed January 3, 2022).

[60] *Heavy metal contamination of prenatal vitamins, supra.*

[61] CDC, Guidelines for the Identification and Management of Lead Exposure in Pregnant and Lactating Women, *available at* https://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf (last accessed January 3, 2022) ("Lead Exposure in Pregnant and Lactating Women").

[62] *Heavy metal contamination of prenatal vitamins, supra.*

[63] "ADHD and Autism Associated with In-Utero Heavy Metals and Essential Minerals," Neuroscience News, April 9, 2021, *available at* https://neurosciencenews.com/asd-adhd-heavy-metals-18207/ (last accessed January 3, 2022).

[64] *Congressional Committee Report, supra.*

87.     Prenatal Lead exposure is also linked to an increased risk of a preterm birth and reduced postnatal development.[65] Maternal Lead exposure may also contribute to the baby developing certain types of congenital heart disease.[66]

88.     Due to the danger of Lead exposure, maximum Lead levels are required for certain consumer products:

(a)     Drinking Water. On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). The previous level had been 15 ppb. 40 C.F.R. §141, Subpart I.

(b)     Bottled Water. The FDA requires that bottled water cannot contain more than 5 ppb of total Lead.  21 C.F.R. §165.110(b)(4)(iii)(A).

(c)     Infant Formula. The European Union has set the maximum Lead level in infant formula to 20 ppb.

89.     Although no federal standard for Lead in prenatal vitamins has been established,[67] there is no known "safe" level of Lead exposure.[68] Prenatal children are at risk of developing behavior and cognitive function impairments due to exposure to Lead at levels far lower than those identified as "safe."[69]

---

[65] *Heavy metal contamination of prenatal vitamins, supra.*

[66] *Id.*

[67] *FDA Survey Data on Lead in Women's and Children's Vitamins, supra* (although no federal standard for Lead exposure has been established, the FDA determined a provisional total tolerable intake level (PTTI) of 25 µg of lead per day for pregnant or lactating women). California's Proposition 65 and U.S. Pharmacopeia limits are 0.5 µgm/day.

[68] *Heavy metal contamination of prenatal vitamins, supra.*

[69] *Id.*

***Heavy Metal Ingredient: Mercury***

90.      Defendant's Prenatal Vitamins contain, or have a risk of containing, Mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in-utero.[70]

91.      Developing fetuses are exceptionally vulnerable to Mercury exposure.[71] In a pregnant woman, Mercury can easily pass through the placenta and accumulate in the fetus as the fetus cannot excrete Mercury.[72] This lack of self-defense leaves a baby in-utero exposed to Mercury that may result in decreased placental and fetal development,[73] and permanent damage to the nervous system.[74]

92.      Although there is no maximum contaminant level for Mercury in prenatal vitamins, the EPA has set a maximum contaminant level for Mercury in drinking water at 2 ppb.[75] However, "there is no known safe level" of exposure to Mercury as it is a "highly toxic element."[76]

93.      The four Heavy Metals – Arsenic, Cadmium, Lead, and Mercury – are significant detriments to children, especially during the gestational period.[77] Of additional

---

[70] Current Problems in Pediatric Adolescent Health Care, "Mercury Exposure and Children's Health," 2010 Sept., *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3096006/ (last accessed January 3, 2022) ("Mercury Exposure and Children's Health").

[71] *Id.*

[72] *Id.*

[73] Prenatal mercury exposure and birth outcomes, *available at* https://www.sciencedirect.com/science/article/abs/pii/S0013935116302857 (last accessed January 3, 2022) ("Prenatal Mercury Exposure and Birth Outcomes").

[74] *Mercury Exposure and Children's Health, supra.*

[75] *Congressional Committee Report, supra.*

[76] *Mercury Exposure and Children's Health, supra.*

[77] *Heavy metal contamination of prenatal vitamins, supra.*

30

concern to developing babies are the health risks due to exposure to multiple Heavy Metals simultaneously, as "co-exposures can have interactive adverse effects."[78]

94.     Understanding the detriment that exposure to Heavy Metals can create, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group, which is aimed toward reducing human exposure to contaminants in dietary supplements, food and cosmetics.[79]

95.     Despite the known risks of exposure to these Heavy Metals, Defendant has intentionally, recklessly, and/or knowingly sold its Prenatal Vitamins without disclosing they contain or have a risk of containing levels of Arsenic, Cadmium, Lead, and Mercury to consumers like Plaintiff.

96.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion or risk of inclusion of Heavy Metals a material fact when considering what prenatal vitamin to purchase.

97.     Defendant knew that monitoring for Heavy Metals in its ingredients and Prenatal Vitamins was not only important but critical.

98.     Defendant also knew that monitoring Heavy Metals was likewise important to its health-conscious consumers.

---

[78] Morello-Frosch R, Cushing LJ, Jesdale BM, Schwartz JM, Guo W, Guo T, Wang M, Harwani S, Petropoulou SE, Duong W, Park JS, Petreas M, Gajek R, Alvaran J, She J, Dobraca D, Das R, Woodruff TJ. Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco. Environ Sci Technol. 2016 Nov 15;50(22):12464-12472. doi: 10.1021/acs.est.6b03492. Epub 2016 Oct 26. PMID: 27700069; PMCID: PMC6681912. *Available at* https://stacks.cdc.gov/view/cdc/80511 (last accessed January 3, 2022).

[79] FDA, "Metals and Your Food," Current as of April 8, 2021, *available at* https://www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food   (last accessed January 3, 2022).

99.     Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Prenatal Vitamins by adequately monitoring its ingredients for Heavy Metals and adjusting any formulation to reduce ingredients that contained higher levels of Heavy Metals.

100.    Defendant also knew it was not monitoring and testing for Heavy Metals in the Prenatal Vitamins. Defendant knew its failure to monitor and test for Heavy Metals in the Prenatal Vitamins continued throughout the Class Period.

101.    Defendant's marketing was misleading due to its failure to properly and sufficiently monitor and test for Heavy Metals and for failure to disclose the presence or risk of presence of Heavy Metals in the Prenatal Vitamins.

102.    Defendant knew or should have known consumers paid the price premium and expected Defendant to test and monitor for Heavy Metals and disclose the presence or risk of Heavy Metals in the Prenatal Vitamins and ingredients.

103.    At all times during the Class Period, Defendant did not monitor or test for Heavy Metals in the Prenatal Vitamins and ingredients and Defendant did not disclose the presence or risk of Heavy Metals in its Products.

104.    Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals in the Prenatal Vitamins and ingredients, and to disclose the presence or risk of any levels of Heavy Metals in its Products.

105.    Defendant knew or should have known the Prenatal Vitamins contained or risked containing Heavy Metals that were inconsistent with its marketing.

106.    Defendant knew or should have known that, in order to comply with its marketing, consumers expected them to ensure the Prenatal Vitamins were monitored and tested for Heavy Metals, and to disclose the presence or risk of Heavy Metals.

107.    Defendant knew, yet failed to disclose, its lack of testing and knowledge of the risk or presence of Heavy Metals in the Prenatal Vitamins ingredients.

108.   Defendant's above-referenced statements, representations, and Omissions are false, misleading, and crafted to deceive the public as they create an image that the Prenatal Vitamins are nutritious and free of Heavy Metals.

109.   Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements and Omissions regarding the quality of the Prenatal Vitamins.  Defendant's nondisclosure and/or concealment of the presence or risk of Heavy Metals in the Prenatal Vitamins alleged herein intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase Products they would not have if the true quality and ingredients were disclosed.

**C. Defendant's Omissions Misled and Deceived Consumers to Believe that its Prenatal Vitamins Do Not Contain or Risk Containing Heavy Metals**

110.   Defendant's Omissions wrongfully convey to consumers that its Prenatal Vitamins have certain superior quality and characteristics that they do not actually possess.

111.   Although Defendant misleadingly causes consumers to believe its Prenatal Vitamins do not contain or risk containing Heavy Metals through its packaging and Omissions, the Products do in fact contain or risk containing undisclosed Heavy Metals, which is material information to reasonable consumers.

112.   Plaintiff's counsel had Defendant's Prenatal Vitamins tested and that testing confirmed that each of Defendant's Prenatal Vitamins that were tested contained undisclosed Heavy Metals.

113.   The highest levels of Arsenic were 552.73 ppb in the Source of Life® Prenatal Multivitamin Tablet (180 count) and 540.01 ppb in the Ultra Prenatal (180 count).

114.   The highest levels of Cadmium were 96.43 ppb in the Source of Life® Prenatal Multivitamin Tablet (180 count).

115.   The highest levels of Lead were 104.26 ppb in the Source of Life® Prenatal Multivitamin Tablet (180 count) and 87.63 ppb in the Source of Life® Garden Prenatal Multivitamin (90 count).

116.   The highest levels of Mercury were 36.86 ppb in the Source of Life® Prenatal Multivitamin Tablet (180 count).

117.   In any case, as stated herein, no level of Heavy Metals is safe.

118.   Defendant's marketing wrongfully fails to disclose to consumers the presence or material risk of Heavy Metals in its Prenatal Vitamins.

119.   Based on Defendant's marketing and Omissions, a reasonable consumer would not suspect the presence or material risk of Heavy Metals, or any harmful level of a Heavy Metal, nor would a reasonable consumer be able to detect the presence of Heavy Metals in the Prenatal Vitamins without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

120.   Reasonable consumers must and do rely on Defendant to honestly report what its Prenatal Vitamins contain.

121.   In light of Defendant's Marketing, Defendant knew or should have known the Prenatal Vitamins contained or risked containing Heavy Metals.

122.   Defendant intended for consumers to rely on its marketing and Omissions, and reasonable consumers did in fact so rely.

123.   Defendant had a duty to ensure its Prenatal Vitamins were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

124.   Pursuant to the foregoing, Defendant's marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

125.   Defendant acted knowingly, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing, and Omissions.

## DEFENDANT'S MISLEADING MARKETING AND OMISSIONS VIOLATE 21 U.S.C. §343

126.   Defendant's statements to consumers that its Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy violate 21 U.S.C. §343, which provides

that dietary supplements are misbranded when their advertising is misleading in a material respect.

127.   Defendant violated 21 U.S.C. §343 by not disclosing that the Prenatal Vitamins contain, or risk containing, Heavy Metals. Defendant's misleading marketing includes misleading statements that the Prenatal Vitamins are "NaturesPlus," and "high-quality" with ingredients that have "guaranteed" and "high" potency. These statements are misleading as Defendant's fail to disclose that the Prenatal Vitamins contain or risk containing undisclosed levels of Heavy Metals.

128.   Accordingly, Defendant's Omissions, which forms the basis of this lawsuit, constitutes a violation of 21 U.S.C. §343.

## DEFENDANT'S OMISSIONS VIOLATE THE
## CURRENT GOOD MANUFACTURING PRACTICES GUIDELINES

129.   By law and regulation, supplement manufacturers like Defendant are required to comply with the current good manufacturing practices ("**CGMP**").  21 CFR §111.

130.   The Dietary Supplement ("**DS**") CGMP rule stated at 21 CFR §111 requires persons who manufacture, package, label or hold a dietary supplement to establish and comply with current good manufacturing practice to ensure the quality of the product and that the product is packaged and labeled as specified in the master manufacturing record.

131.   Despite its "Process" including "Manufacturing & Testing" and "Packaging & Label Design[,]"[80] Defendant violated the DS CGMP rule by knowingly, recklessly, and/or intentionally incorrectly claiming that its Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy, and by not disclosing that its Products contain or risk containing Heavy Metals.

---

[80] https://naturesplus.com/pages/the-process (last accessed February 7, 2022).

132.   Accordingly, Defendant's Omissions on the packaging of its Prenatal Vitamins, which forms the basis of this lawsuit, constitutes a violation of the DS CGMP rule stated at 21 CFR §111.

**DEFENDANT'S OMISSIONS VIOLATE CALIFORNIA LAWS**

133.   California law is designed to ensure that a company's claims about its products are truthful and accurate.

134.   Defendant violated California law by knowingly, recklessly, and/or intentionally incorrectly claiming that its Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy, are "NaturesPlus," and "high-quality" with ingredients that have "guaranteed" and "high" potency, and by not disclosing the presence or risk of Heavy Metals in the Products.

135.   Defendant's marketing has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each omission.

136.   Defendant has engaged in this long-term advertising campaign omitting any mention the Prenatal Vitamins contain or have a material risk of containing harmful ingredients, such as Heavy Metals.

**PLAINTIFF'S RELIANCE WAS REASONABLE
AND FORESEEN BY DEFENDANT**

137.   Plaintiff reasonably relied on Defendant's claims, warranties, representations, advertisements, Omissions, and other marketing concerning the particular qualities and benefits of the Prenatal Vitamins.

138.   Plaintiff read and relied upon the labels and packaging of the Prenatal Vitamins when making her purchasing decisions. Had she known Defendant did not disclose the presence or risk of Heavy Metals in its packaging, she would not have purchased them.

139.   A reasonable consumer would consider the labeling of a product when deciding whether purchase a product. Here, Plaintiff relied on the Omissions on the Prenatal Vitamins labeling that led her to believe they were natural, nutritious, and nurturing of a healthy pregnancy, and free of the presence or risk of Heavy Metals.

## DEFENDANT'S KNOWLEDGE AND NOTICE
## OF ITS BREACHES OF ITS IMPLIED WARRANTIES

140.   Defendant had sufficient notice of its breach of implied warranties.  Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins through its marketed testing and manufacturing procedures and standards, robust research practices,[81] and claims of the "guaranteed" and "high" quality and potency of its Products.[82]

141.   Defendant did not change its packaging or labels to include any disclaimer that its Prenatal Vitamins contained or risked containing any levels of Heavy Metals.

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

142.   Defendant knew that reasonable consumers such as Plaintiff and the proposed Class would be the end purchasers of the Prenatal Vitamins and the target of its advertising, marketing, Omissions, and statements.

143.   Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Prenatal Vitamins, including Plaintiff and the proposed Class.

144.   Defendant directly marketed to Plaintiff and the proposed Class through its packaging.

---

[81] https://naturesplus.com/pages/the-process (last accessed February 7, 2022).

[82] https://naturesplus.com/pages/np-family (last accessed February 7, 2022).

37

145.   Plaintiff and the proposed Class are the intended beneficiaries of the implied warranties.

## CLASS ACTION ALLEGATIONS

146.   Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons residing in the United States or its territories who, during the maximum period of time permitted by law, purchased NaturesPlus Prenatal Vitamins (specifically, Ultra Prenatal® Multivitamin Tablets; Source of Life® Prenatal Multivitamin Tablets; Source of Life® Liquid Prenatal Multivitamin; Source of Life® Garden Prenatal Multivitamin Tablets), manufactured by Defendant, Natural Organics, Inc., d/b/a NaturesPlus.[83]

147.   Excluded from the Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

148.   Also excluded from the Class are any individuals or businesses who purchased the NaturesPlus Prenatal Vitamin products for the purpose of resale.

149.   This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

150.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

151.   Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

      (a)     whether Defendant owed a duty of care;

      (b)     whether Defendant owed a duty to disclose;

---

[83] Plaintiff reserves the right to amend this definition as necessary in accordance with applicable Federal and California law.

38

(c)     whether Defendant knew or should have known that the Prenatal Vitamins contained or may contain Heavy Metals;

(d)     whether Defendant failed to disclose that the Prenatal Vitamins contained or may contain Heavy Metals;

(e)     whether the claims of the Plaintiff and the Class serve a public benefit;

(f)     whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

(g)     whether the Omissions are material to a reasonable consumer;

(h)     whether the inclusion of Heavy Metals in the Prenatal Vitamins is material to a reasonable consumer;

(i)     whether the Omissions are likely to deceive a reasonable consumer;

(j)     whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

(k)     whether Defendant breached its duty of care;

(l)     whether Defendant breached its duty to disclose;

(m)     whether Defendant violated the laws of the State of California;

(n)     whether Defendant breached its implied warranties;

(o)     whether Defendant engaged in unfair trade practices;

(p)     whether Defendant engaged in false advertising;

(q)     whether Defendant made fraudulent omissions;

(r)     whether Defendant violated 21 USC §343;

(s)     whether Defendant violated the Good Manufacturing Practices Guidelines;

(t)     whether Plaintiff and members of the Class are entitled to actual, statutory, and punitive damages; and

(u)     whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

152.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

153.  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

154.  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

155.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

156.  Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

157.  As a result of the foregoing, class treatment is appropriate.

## COUNT I

**(Violations of California's Consumer Legal Remedies Act,
California Civil Code §§1750,
*Et Seq.*, Against Defendant on Behalf of the Class)**

158.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

159.  Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code §1761(d).

160. The Prenatal Vitamins are "goods," as that term is defined in California Civil Code §1761(a).

161. Defendant is a "person" as that term is defined in California Civil Code §1761(c).

162. Plaintiff and each proposed Class member's purchase of Defendant's Products constituted a "transaction" as that term is defined in California Civil Code §1761(e).

163. Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act ("**CLRA**"):

(a)    California Civil Code §1770(a)(5), by failing to make any mention of the presence or risk of Heavy Metals in the Prenatal Vitamins;

(b)    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Prenatal Vitamins were of a particular standard, quality, or grade, when they were of another; and

(c)    California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Prenatal Vitamins with intent not to sell them as advertised.

164. The Omissions were material as reasonable consumers such as Plaintiff and the Class would deem the presence or risk of Heavy Metals important in determining whether to purchase the Prenatal Vitamins.

165. The Omissions also relate to the risk of harm presented to women who are pregnant or may become pregnant and developing babies due to consuming the Prenatal Vitamins.

166. Defendant was obligated to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins because:

(a)    Defendant had exclusive knowledge of the presence or risk of Heavy Metals in the Prenatal Vitamins that were not known or reasonably accessible to Plaintiff and the Class;

(b)     Defendant actively concealed the presence or risk of Heavy Metals from the Plaintiff and the Class; and

(c)     Defendant made partial statements on the Prenatal Vitamins' packaging that gave a misleading impression to reasonable consumers without further information because the presence or risk of presence of Heavy Metals had not been disclosed.

167.   Plaintiff and the Class relied upon the information supplied to them by Defendant's packaging as to the quality, make-up, and included ingredients of the Prenatal Vitamins.

168.   As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Prenatal Vitamins.

169.   Plaintiff and the Class have also suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

170.   In accordance with California Civil Code §§ 1782(a) and (d), Plaintiff has provided Defendant with the appropriate notice and demand, but Defendant has denied its wrongful acts and practices and refused to provide any relief to Plaintiff or the Class.

171.   In compliance with Cal. Civ. Code § 1780(d), Plaintiff's affidavit of venue is attached hereto as Exhibit "1."

172.   Plaintiff seeks for herself and the Class compensatory and punitive damages under the CLRA, and also an award of attorneys' fees pursuant to, *inter alia*, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

## COUNT II
### (Violations of California False Advertising Law,
### California Business & Professions
### Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Class)

173.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

174.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

175.   As set forth herein, Defendant's failure to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins is likely to deceive the public.

176.   Defendant knew that the Prenatal Vitamins contained or had a risk of containing undisclosed levels of Heavy Metals, which are potentially dangerous substances. Defendant had a duty to disclose the presence or risk of Heavy Metals and by omitting their presence, misled consumers.

177.   Defendant knew, or reasonably should have known, that all these Omissions were misleading.

178.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these Products in the future if she can be assured that, so long as the Prenatal Vitamins are as advertised: natural, nutritious, and nurturing of a healthy pregnancy, and do not contain or risk containing Heavy Metals.

179.   Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Prenatal Vitamins.

### COUNT III

**(Violations of the Unfair Competition Law,
California Business & Professions Code §§17200, *Et Seq.*,
Against Defendant on Behalf of the Class)**

180.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

181.   The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

182.   Defendant's failure to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins is likely to deceive the public.

**Unlawful**

183.  As alleged herein, Defendant's failure to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins violate at least the following laws:

(a)  The CLRA, California Business & Professions Code §§1750, et seq.; and

(b)  The False Advertising Law, California Business & Professions Code §§17500, *et seq.*

**Unfair**

184.  Defendant's conduct with respect to the packaging and sale of the Prenatal Vitamins is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

185.  Defendant's conduct with respect to the packaging and sale of the Prenatal Vitamins is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

186.  Defendant's conduct with respect to the packaging and sale of the Prenatal Vitamins is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

187.  Defendant was obligated to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins because:

(a)  Defendant had exclusive knowledge of the presence or risk of Heavy Metals in the Prenatal Vitamins that were not known or reasonably accessible to Plaintiff and the Class;

(b)  Defendant actively concealed the presence or risk of Heavy Metals from Plaintiff and the Class; and

(c)    Defendant made partial statements on the Prenatal Vitamins' packaging that gave a misleading impression to reasonable consumers without further information because the presence or risk of Heavy Metals had not been disclosed.

188.    The Omissions were contrary to the representations Defendant made on the Prenatal Vitamins' packaging.

189.    Plaintiff and the Class relied upon the Prenatal Vitamins' packaging provided to them by Defendant when making their purchasing decisions. Had Plaintiff and the Class known Defendant failed to disclose the presence or risk of Heavy Metals from its packaging, they would not have purchased the Prenatal Vitamins.

190.    In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

191.    On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Prenatal Vitamins, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT IV
### (Breach of Implied Warranty of Merchantability,
### California Commercial Code §2314, Against Defendant On Behalf of the Class)

192.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

193.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

194.    There was a sale of goods from Defendant to Plaintiff and the Class members.

195.    As set forth herein, Defendant manufactured and sold the Prenatal Vitamins, and prior to the time the Prenatal Vitamins were purchased by Plaintiff and members of the Class, impliedly warranted to them that the Prenatal Vitamins were of merchantable

quality and fit for their ordinary use (consumption by women who are pregnant or may become pregnant).

196. Plaintiff and the Class relied on these implied warranties when they purchased the Prenatal Vitamins.

197. The Prenatal Vitamins were not fit for their ordinary use (consumption by women who are pregnant or may become pregnant) as they included or risked including undisclosed levels of heavy Metals that do not conform to the packaging.

198. These promises became part of the basis of the bargain between Defendant and Plaintiff and the Class members, and thus constituted implied warranties.

199. Defendant breached the implied warranties by selling Prenatal Vitamins that contain Heavy Metals.

200. Defendant was on notice of this breach as it was aware of the presence or risk of Heavy Metals in the Prenatal Vitamins as it has, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins and it is required to comply with the law and regulation.

201. Privity exists because Defendant impliedly warranted to Plaintiff and the Class members through the packaging that the Prenatal Vitamins were natural, nutritious, and nurturing of a healthy pregnancy, and by failing to mention or disclose the presence or risk of Heavy Metals.

202. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and the Class suffered actual damages as they purchased the Prenatal Vitamins that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of Heavy Metals.

203. Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's failure to deliver goods that conform to their implied warranties and resulting breach.

# COUNT V

## (Unjust Enrichment Against Defendant on Behalf of the Class)

204.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

205.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Prenatal Vitamins. Defendant knowingly and willingly accepted and enjoyed these benefits.

206.    Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Prenatal Vitamins would not contain Heavy Metals. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

207.    Defendant was obligated to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins because:

(a)    Defendant had exclusive knowledge of the presence or risk of Heavy Metals in the Prenatal Vitamins that were not known or reasonably accessible to the Plaintiff and the Class;

(b)    Defendant actively concealed the presence or risk of Heavy Metals from the Plaintiff and the Class; and

(c)    Defendant made partial statements on the Prenatal Vitamins' packaging that gave a misleading impression to reasonable consumers without further information because the presence or risk of Heavy Metals had not been disclosed.

208.    Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

209.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

210.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

47

## COUNT VI
### (Fraud by Omission Against Defendant on Behalf of the Class)

211.   Plaintiff repeats and realleges the allegations contained above, as though fully set forth herein.

212.   Defendant knew or should have known that the Prenatal Vitamins contained or risked containing undisclosed levels of Heavy Metals.

213.   Plaintiff and the Class and Defendant acted within the context of a business transaction when Plaintiff and the Class purchased Defendant's Prenatal Vitamins for household or business use, and not for resale.

214.   Plaintiff and the Class were ordinary non-business consumers.

215.   Defendant actively and knowingly concealed from and failed to disclose to Plaintiff and the Class that the Prenatal Vitamins included or risked including undisclosed levels of Heavy Metals that do not conform to the Products' packaging.

216.   As prenatal vitamin manufacturers, Defendant is in a special position of trust upon which consumers rely.

217.   Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Prenatal Vitamins because:

(a)   Defendant was in a superior position to know the true state of facts about its Products;

(b)   Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Prenatal Vitamins for consumption by women who are pregnant or may become pregnant; and

(c)   Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover the presence or risk of inclusion of Heavy Metals without Defendant disclosing it on the Prenatal Vitamins' packaging.

218.   Defendant knows its customers trust the quality of its Products and they expect Defendant's Prenatal Vitamins to be free of the presence or risk of Heavy Metals.

Defendant also knows that certain consumers seek out and wish to purchase premium prenatal vitamins that possess high quality ingredients free of the presence or risk of toxins, contaminants, or chemicals, and that these consumers will pay more for prenatal vitamins that they believe possess these qualities.

219.    Due to the Omissions on the Prenatal Vitamins' packaging, Defendant had a duty to disclose the whole truth about the presence or risk of Heavy Metals in the Prenatal Vitamins to Plaintiff and the Class.

220.    Defendant acted in bad faith when it intended that Plaintiff and the Class would rely on the Omissions when purchasing the Prenatal Vitamins, unaware of the undisclosed material facts.

221.    Defendant was under a duty to disclose the presence or risk of Heavy Metals because Defendant undertook the disclosure of information about the Prenatal Vitamins on the Prenatal Vitamins' packaging.

222.    Defendant failed to discharge its duty to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins.

223.    Defendant allowed its packaging to intentionally mislead consumers, such as Plaintiff and the Class.

224.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered the presence or risk of Heavy Metals important when deciding whether to purchase the Prenatal Vitamins.

225.    Defendant knew or should have known the Omissions were material to Plaintiff's and the Class's decisions to purchase the Prenatal Vitamins and would induce Plaintiff and the Class to purchase the Prenatal Vitamins.

226.    Defendant intentionally concealed the presence or risk of Heavy Metals in the Prenatal Vitamins with intent to defraud and deceive Plaintiff and the Class.

227.    Plaintiff and the Class justifiably relied on Defendant's Omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients

of the Prenatal Vitamins, which is misleading when compared to how the Prenatal Vitamins are advertised and represented by Defendant and inherently unfair to consumers of the Prenatal Vitamins, such as Plaintiff and the Class.

228.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Prenatal Vitamins that were worth less than the price they paid and that they would not have purchased at all had they known Prenatal Vitamins included or risked including undisclosed levels of Heavy Metals that do not conform to the Products' packaging.

229.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.   An order enjoining Defendant from selling the Prenatal Vitamins until the higher and/or unsafe levels of Heavy Metals are removed;

C.   An order enjoining Defendant from selling the Prenatal Vitamins until any levels, or risk of any levels, of Heavy Metals are disclosed on the Products' labels;

D.   An order enjoining Defendant from selling the Prenatal Vitamins in any manner suggesting or implying that they are natural, nutritious, and nurturing of a healthy pregnancy;

E.   An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling its existing Prenatal Vitamins;

F.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

G.     An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

H.     An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

J.     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

K.     An order requiring Defendant to pay punitive damages on any count so allowable;

L.     An order awarding attorneys' fees and costs to Plaintiff and the Class; and

M.     An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  June 9, 2022                MILLER SHAH LLP

By:  */s/Kolin C. Tang*
Kolin C. Tang (SBN 279834)
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 545-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST*
REBECCA A. PETERSON (SBN 241858)
MEGAN S. VAN DYKE*
CATHERINE A. PETERSON*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
E-mail: rkshelquist@locklaw.com
E-mail: rapeterson@locklaw.com
E-mail: msvandyke@locklaw.com
E-mail: capeterson@locklaw.com

Charles J. LaDuca
Alexandra C. Warren
CUNEO GILBERT &
LADUCA, LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC  20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813
Email:  charles@cuneolaw.com
Email:  Awarren@cuneolaw.com

PGMBM, LLC
Harris L. Pogust, Esq.*
Joshua M. Neuman, Esq.*
Jordyn N. Mitzman, Esq.*
161 Washington Street, Suite 250
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile: (610) 941-4245
Email:  hpogust@pgmbm.com
Email:  jneuman@pgmbm.us
Email:  jmitzman@pgmbm.us

James C. Shah (SBN 260435)
MILLER SHAH LLP
1845 Walnut St., Suite 806
Philadelphia, PA 19103
Telephone: (856) 526-1100
Facsimile: (866) 300-7367
jcshah@millershah.com

**Attorneys for Plaintiffs**

*Pro Hac Vice* admission to be sought