1  **ARNOLD & PORTER KAYE SCHOLER LLP**
   TRENTON H. NORRIS (Bar No. 164781)
2  WILLIS WAGNER (Bar No. 310900)
   Three Embarcadero Center, 10th Floor
3  San Francisco, CA 94111-4024
   Telephone:  415.471.3100
4  Facsimile:  415.471.3400
   trent.norris@arnoldporter.com
5  will.wagner@arnoldporter.com

6  *Attorney for Defendant*
7  NATURAL ORGANICS, INC.

8

9                  UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

11

12

13  JASMINE BARNES,                  | Case No. 5:22-cv-00314-JGB-PLA

14              Plaintiff,           | **DEFENDANT NATURAL**
                                     | **ORGANICS, INC.'S NOTICE OF**
15        v.                         | **MOTION AND MOTION TO**
                                     | **DISMISS FIRST AMENDED**
16  NATURAL ORGANICS, INC.,          | **COMPLAINT**

17              Defendant.           | Date: September 12, 2022
18                                   | Time: 9:00 a.m.
19                                   | Courtroom: 1
                                     | Judge: Hon. Jesus Bernal
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on September 12, 2022, at 9:00 a.m. at 3470 Twelfth Street, Riverside, California 92501-3801 in Courtroom 1 of the above-captioned Court, Defendant Natural Organics, Inc. ("Natural Organics") will and hereby does move to dismiss Plaintiff's First Amended Complaint ("FAC") (ECF No. 46) with prejudice pursuant to Rule 12, subsections (b)(1) and (b)(6), of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.   This Motion is made following the conferences of counsel pursuant to L.R. 7-3 which took place on March 7, April 28, and May 9, 2022.

This is Natural Organics' second Motion to Dismiss.  The first Motion to Dismiss (ECF No. 40) raised the same issues with Plaintiff's original Complaint (ECF No. 1) as this second Motion does.  But the first Motion to Dismiss also raised two procedural defects under the California Consumers Legal Remedies Act ("CLRA").  Before filing its first Motion to Dismiss, Natural Organics raised the two procedural defects with Plaintiff.  *See* ECF No. 38, ¶ 3.  Plaintiff chose not to address those issues at that time, instead waiting to review Natural Organics' Motion to Dismiss.  Subsequently, rather than oppose the first Motion to Dismiss, Plaintiff filed its FAC (ECF No. 46), in which Plaintiff only addressed the two procedural defects under the CLRA.  This Motion challenges the FAC.

This Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Samantha Gilson (ECF No. 40-1), the Request for Judicial Notice (ECF No. 41), and any arguments heard or considered by the Court, and any other matters the Court may properly consider.

/ / /

/ / /

/ / /

/ / /

1    / / /

2    ### STATEMENT OF RELIEF SOUGHT

3        Natural Organics seeks an order pursuant to Rule 12(b)(1) and Rule 12(b)(6)

4    dismissing the FAC with prejudice for lack of subject matter jurisdiction and for

5    failure to state a claim upon which relief can be granted.

6

7

8    Dated:  July 8, 2022                    ARNOLD & PORTER KAYE SCHOLER LLP

9

10

11                                    By: */s/ Trenton H. Norris*
                                         Trenton H. Norris

12

13                                    *Attorney for Defendant*
                                      NATURAL ORGANICS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND .................................................................................................2

    A.   Plaintiff's Allegations ................................................................................2

    B.   U.S. Food and Drug Administration .........................................................4

    C.   California's Proposition 65 ........................................................................4

III. LEGAL STANDARD ........................................................................................5

IV.  ARGUMENT......................................................................................................7

    A.   Plaintiff Lacks Article III Standing...........................................................7

        1.   Plaintiff Fails to Identify a Particularized Injury..........................7

        2.   Plaintiff Fails to Establish Economic, Much Less Physical, Injury..........................................................................8

    B.   Plaintiff States Only Claims that are Derivative of an Unalleged Proposition 65 Claim, But Her Test Results Demonstrate that No Warnings Are Required........................................11

        1.   Plaintiff's FAC States an Implicit Proposition 65 Claim and Must Be Dismissed for Lack of a Mandatory Pre-Suit Proposition 65 Notice. ....................................................12

        2.   Even If Plaintiff Had Met Proposition 65 Pre-Suit Requirements, Her Pleaded Test Results Show the Products Do Not Require a Warning. ...........................................15

        3.   Plaintiff's FAC Fails to Allege Affirmative Representations Contrary to the Presence of Heavy Metals.......................................17

    C.   Plaintiff's Lead Claims are Barred by Res Judicata. ...............................18

    D.   Reasonable Consumers Cannot Be Deceived by the Challenged Representations, and Plaintiff Does Not Allege Reliance on Them..................................................20

    E.   Plaintiff's Claim for Breach of Warranty Fails.......................................24

    F.   Plaintiff's Claim for Unjust Enrichment is Not Available. .....................25

V.   CONCLUSION .................................................................................................25

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:22-cv-00314-JGB-PLA

# TABLE OF AUTHORITIES

## Cases                                                                   Pages(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................... 5, 6

*Balser v. Hain Celestial Grp., Inc.*,
   640 F. App'x 694 (9th Cir. 2016)................................................. 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................... 5

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal.4th 163 (1999)................................................... 11, 15, 17

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*,
   60 Cal. App. 4th 1053 (1998) .................................................... 18

*Consumer Advoc. Grp., Inc. v. ExxonMobil*,
   168 Cal. App. 4th 675 (2008) ............................................... 18, 20

*Davis v. HSBC Bank*,
   691 F.3d 1152 (9th Cir. 2012) .................................................. 11

*Doss v. Gen. Mills, Inc.*,
   No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*, 816 F.
   App'x 312 (11th Cir. 2020) ...................................................... 7, 8

*Envtl. L. Found. v. Beech-Nut Nutrition Corp.*,
   235 Cal. App. 4th 307 (2015), *as modified on denial of reh'g* (Apr. 16, 2015) ... 15

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) .................................................... 6

*Fernandez v. Atkins Nutritionals, Inc.*,
   No. 317CV01628GPCWVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ........... 25

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
   No. 19-cv-1345 DMS (AGS), 2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ....12, 13, 18, 22

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
   No. 19-CV-1345 TWR (AGS), 2021 WL 822721 (S.D. Cal. Jan. 22, 2021) ....... 24

*Hammock v. Nutramarks, Inc.*,
No. 15CV2056 BTM (NLS), 2016 WL 4761784 (S.D. Cal. Sept. 12, 2016)....... 24

*Hanna v. Walmart Inc.*,
No. 520CV01075MCSSHK, 2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ......... 13

*Harris v. R.J. Reynolds Vapor Co.*,
No. 15-CV-04075-JD, 2016 WL 6246415 (N.D. Cal. Sept. 30, 2016)................. 13

*Hauk v. JP Morgan Chase Bank U.S.*,
552 F.3d 1114 (9th Cir. 2009) ................................................................. 12

*Hauter v. Zogarts*,
14 Cal. 3d 104 (1975) ............................................................................ 24

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .................................................................. 17

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018)......................................................... 6

*In re Capacitors Antitrust Litig.*,
106 F. Supp. 3d 1051 (N.D. Cal. 2015)..................................................... 25

*In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*,
831 F. Supp. 2d 507 (D. Mass. 2011)......................................................... 8

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................... 6

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ....................................................................... 8

*In re Vaccine Cases*,
134 Cal. App. 4th 438  (2005) ............................................................... 12

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) ................................................................ 10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................... 6

*Kimca v. Sprouts Foods, Inc.*,
No. CV 21-12977 (SRC), 2022 WL 1213488 (D.N.J. Apr. 25, 2022) ................ 10

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:22-cv-00314-JGB-PLA

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ........................................................... 8

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App.4th 496 (2003) ................................................................ 21

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................. 6

*LiMandri v. Judkins*,
   52 Cal. App.4th 326 (1997) .................................................................. 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 6, 7

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ................................................................. 9

*McKinnis v. Kellogg USA*,
   No. CV07-2611ABC(RCX), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ....... 22

*Meaunrit v. Pinnacle Foods Grp., LLC*,
   No. C 09-04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010) ...................... 8

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ............................................................. 20, 21

*Newcal Industries, Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................. 22

*Pels v. Keurig Dr. Pepper, Inc.*,
   No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ................... 8

*People ex rel. Brown v. Tri-Union Seafoods, LLC*,
   171 Cal. App. 4th 1549 (2009) .......................................................... 17

*People v. 21st Century Healthcare, Inc., et al.*,
   Alameda Superior Court, No. RG08426937 (Nov. 16, 2012) .............. 2, 18, 19, 20

*Physicians Comm. for Responsible Med. v. KFC Corp.*,
   224 Cal. App. 4th 166 (2014) .............................................................. 14

*Pisano v. American Leasing*,
   146 Cal. App. 3d 194 (1983) .............................................................. 24

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:22-cv-00314-JGB-PLA

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ................................................................ 10

*Schloegel v. Edgewell Pers. Care Co.*,
   No. 4:21-CV-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ............. 7

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) .................................... 5, 12, 13, 14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016) .................................... 7

*Stearns v. Select Comfort Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................ 24

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................ 7

*Tran v. Sioux Honey Ass'n Cooperative*,
   471 F. Supp.3d 1019 (C.D. Cal. 2020) .............................................. 21

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 6

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................. 24

*Vitt v. Apple Computer, Inc.*,
   469 F. App'x. 605 (9th Cir. 2012) ............................................. 22, 23

*Weaver v. Champion Petfoods USA Inc.*,
   No. 18-CV-1996-JPS, 2019 WL 2774139 (E.D. Wis. July 1, 2019) ................... 22

*Welk v. Beam Suntory Imp. Co.*,
   124 F. Supp.3d 1039 (S.D. Cal. 2015) ............................................. 23

*Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456, SBA, 2010 WL 2673860 (N.D.
   Cal. July 2, 2010) .............................................................. 21, 22

**Statutes**

21 U.S.C. § 346 ...................................................................... 4

Cal. Bus. & Profs. Code § 17200 ...................................................... 19

Cal. Civ. Code §§ 1750 *et seq.* ...................................................... 2

Cal. Code Regs. tit. 27, § 25705 ............................................................. 5, 16

Cal. Code Regs. tit. 27, § 25707(b) ............................................................. 16

Cal. Code Regs. tit. 27, § 25721 ................................................................. 15

Cal. Code Regs. tit. 27, § 25805 ............................................................. 5, 16

Cal. Code Regs. tit. 27, § 25821 ................................................................. 15

Cal. Com. Code § 2314(2) .......................................................................... 24

Cal. Health & Safety Code §§ 25249.5, *et seq*. .......................................... 4

Cal. Health & Safety Code § 25249.7(d)(1) ................................................ 14

Cal. Health & Safety Code §§ 25249.10(c) ................................................... 5

**<u>Other Authorities</u>**

Fed. R. Civ. Proc. 9(b) ...........................................................2, 6, 23, 24

Fed. R. Civ. Proc. 12(b)(1) ........................................................................... 6

Fed. R. Civ. Proc. 12(b)(6) ..................................................................... 5, 22

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3

Plaintiff Jasmine Barnes claims she has been harmed by Defendant Natural

4

Organics, Inc. because some of its vitamins allegedly contain certain heavy metals.  She

5

does not allege personal injury, only that the products[1] "did not deliver what they had

6

promised."  First Amended Complaint ("FAC") ¶ 37.  This alleged promise was her

7

"belie[f] she was taking prenatal vitamins to give her body the nutrients needed for a

8

heathy pregnancy."  FAC ¶ 36.  But she never alleges that the vitamins did *not* deliver

9

the nutrients that she believed she was promised.  She simply theorizes that she has been

10

economically harmed because the vitamins (like most plant products) contain trace

11

levels of four heavy metals—lead, cadmium, mercury, and arsenic.  For this reason, and

12

because Plaintiff did not test products that she purchased for her use, she lacks standing

13

to proceed.

14

Plaintiff contends that she was unaware that the Products she purchased

15

"contained or had a material risk of containing undisclosed levels of Heavy Metals."

16

FAC ¶ 36.  But heavy metals are naturally occurring in the Earth's crust, and therefore

17

trace amounts are ubiquitous in foods made from plants.  This is well-known to

18

regulators, public health officials, food manufacturers, and reasonable consumers.

19

Plaintiff also alleges she was owed a warning about these trace metals but never

20

explains why she has not claimed a violation of California's Proposition 65.  The four

21

substances are listed under Proposition 65.  A private enforcer seeking to bring a failure

22

to warn claim relating to Proposition 65-listed substances must first satisfy stringent

23

pre-suit notice requirements.  Because this is a mandatory pre-condition to a failure to

24

warn lawsuit against listed substances, the FAC must be dismissed with prejudice.

25

But on closer inspection, it is clear why Plaintiff has not brought a Proposition

26

65 claim. First, she alleges that her counsel tested the Products for heavy metals and

27

28

---

[1] Ultra Prenatal® Multivitamin Tablets, Source of Life® Prenatal Multivitamin Tablets, Source of Life® Liquid Prenatal Multivitamin, and Source of Life® Garden Prenatal Multivitamin Tablets (collectively, "Products").

measured specific levels detailed in the FAC. Even under conservative assumptions, these levels are below Proposition 65 warning thresholds—the most conservative in the world.  Had Plaintiff issued a Proposition 65 notice, it would have lacked merit. Moreover, given how low those reported levels were, Plaintiff cannot plausibly plead they are material to reasonable consumers.  Second, Plaintiff goes out of her way to avoid Proposition 65 because the Products named in the FAC are governed by a court-approved Proposition 65 consent judgment that presents a complete bar to enforcement relating to lead.

To the extent the FAC relies on actual representations by Natural Organics, those statements are not deceptive to a reasonable consumer and in fact have nothing to do with heavy metal content.  Natural Organics does not state or imply the Products are free from heavy metals.  As a result, Plaintiff resorts to citing vague, non-actionable online content and some labels' depictions of fruits and vegetables. These representations come nowhere near to misleading a reasonable consumer about trace levels of heavy metals alleged to be present in the Products.

Moreover, Plaintiff's FAC, which sounds in fraud, fails to meet the particularity requirements of Rule 9(b) in multiple respects. It also fails to comply with the requirements of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and its ancillary claims for breach of warranty and unjust enrichment are legally unsound.  Natural Organics respectfully requests that the FAC be dismissed in its entirety.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff pleads a false advertising case on the basis that the Products contain trace levels of lead, cadmium, arsenic, and mercury (collectively, "trace metals" or "heavy metals") even though their labels and advertising do not claim to be "free" of such substances.  *See* FAC ¶ 1.  She alleges that, because the labels do not explicitly list each of these contaminants, she was injured by paying a premium price because

2

the Products "did not deliver what they promised." *Id.* at ¶¶ 36–37.  Plaintiff does not allege personal injury, but only that she believes she overpaid for the Products.

Plaintiff repeatedly alleges that the basis of her claim is an omission theory for failure-to-warn.  FAC, at 7.  For example, she alleges: "Defendant fails to disclose to consumers that the Prenatal Vitamins contain or risk containing Heavy Metals. Nowhere on the Prenatal Vitamins' packaging is it disclosed that they contain, or risk containing, Heavy Metals." *Id.* at ¶ 9.  She goes on to allege: "The Prenatal Vitamins' packaging does not include any type of disclaimer or disclosure regarding the presence or risk of Heavy Metals that would inform consumers of their presence." *Id.* at ¶ 10; *see also id.* at ¶¶ 19–22, 34, 36, 39, 66, 108–11, 119, 122, 125, 128, 132, 135, 137, 139, 142, 151, 164–65, 177, 188, 219–20, 225, 227.

Apparently realizing an omission case is not viable, Plaintiff attempts to allege certain express label claims are misleading in light of trace heavy metal content. Plaintiff alleges that the "NaturesPlus" brand name implies that the Products are "natural." *Id.* at ¶ 42.  She alleges that the images of fruits and vegetables on certain labels, along with the brand name "Source of Life®" or "Garden," are misleading (despite the fact that fruits and vegetables contain Heavy Metals).  *Id.* at ¶ 43.  She alleges that label claims related to use during pregnancy, the phrase "high potency," and the phrase "Certified Organic Gold Standard Whole Food Multivitamin" are misleading. *Id.* at ¶¶ 45, 58–60. And she tries to bolster her false advertising argument by citing to online marketing claims, including that the Products are a "natural supplement for all phases of pregnancy," "bringing you high-quality products with the guaranteed potency you deserve," and that the Defendant's "five core values" include "continually striv[ing] to create innovative, cutting-edge products that not only meet our customers' needs, but far exceed them." *Id.* at ¶¶ 44, 46–47.  None of these claims are inconsistent with the presence of heavy metals in the Products.

Plaintiff generally alleges that her "counsel had Defendant's Prenatal Vitamins tested," and the Products contained heavy metals.  *Id.* at ¶ 112.  Plaintiff does not

1    allege that any Product that *she* actually purchased for her own use was tested.  *Id.*

2    She also alleges specific concentrations of heavy metals in the Products, based on the

3    "highest levels" detected by Plaintiff's counsel. *Id.* at ¶¶ 113–16.  But she does not

4    allege that *all* units of the Products have the same level of heavy metals, or any level

5    at all, instead carefully alleging that the Products "contained *or risked containing*

6    Heavy Metals."  *See, e.g.*, *id.* at ¶¶ 37, 69, 105 (emphasis added).

7        **B.   U.S. Food and Drug Administration**

8        The U.S. Food and Drug Administration ("FDA") monitors and works to

9    reduce heavy metal content in food.  Request for Judicial Notice ("RJN"), ECF No.

10   41, Exhibit A ("When the level of metals is determined to be unsafe, the FDA uses

11   its authority to take action on a case-by-case basis.").  FDA recognizes that some

12   substances, like heavy metals, are naturally occurring and cannot be avoided. *See id.*

13   ("Metals, like other naturally occurring elements, enter our food supply through our

14   air, water and soil."); *see also* 21 U.S.C. § 346.  FDA also monitors and sets standards

15   for levels of lead and other heavy metals in certain foods, foodwares, dietary

16   supplements, and cosmetics.  RJN, Ex. B.  For example, FDA has set an Interim

17   Reference Level ("IRL") for lead—the consumption rate that raises blood levels to a

18   point of concern—at 3 micrograms per day for children and 12.5 micrograms per day

19   for adults.  *Id.*   The IRL was specifically evaluated for children and women of

20   childbearing age. *Id.*  Despite FDA's awareness that trace amounts of heavy metals

21   may be present in women's and children's vitamins, it has not found reason to use its

22   authority to set regulatory limits for such products, much less to require their

23   disclosure as Plaintiff seeks.

24       **C.   California's Proposition 65**

25       Proposition 65 is a consumer right-to-know initiative approved by California

26   voters that requires product warnings at very conservative levels for approximately

27   900 chemicals.  Cal. Health & Safety Code §§ 25249.5, *et seq*.  The heavy metals—

28   lead, cadmium, arsenic, and mercury—are all listed.  Under Proposition 65, "[n]o

person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." *Id*. at § 25249.6. If a listed chemical, like trace metals, is in a product and can therefore expose a consumer, a business has a duty to warn unless it can satisfy the statutory exposure defense. *Id.* at § 25249.10(c). While the defense can be complex, the state promulgates safe harbor levels for some listed chemicals, including No Significant Risk Levels ("NSRL") for chemicals listed as carcinogens, and Maximum Allowable Dose Levels ("MADL") for chemicals listed as reproductive toxicants. *See* Cal. Code Regs., tit. 27, §§ 25705, 25805. The agency determines safe harbor levels for lead, cadmium, and arsenic. California courts have determined it for mercury. There is no duty to warn for a chemical in a product if the exposure is under the safe harbor NSRL or MADL. Cal. Health & Safety Code §§ 25249.10(c).

Further, Proposition 65 allows a private plaintiff to bring an enforcement action only *after* providing pre-suit notice to the defendant, the California Attorney General, and other public officials. *See id.* at § 25249.7(d)(1). "California cases strictly enforce the notice requirements and hold that pre-filing notice is mandatory." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 790 (N.D. Cal. 2015). Thus, "if a Plaintiff commenced an action under Proposition 65 without providing suitable statutory notice, the Plaintiff should not be able to maintain that action." *Id.*

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when a plaintiff pleads sufficient facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

5

1    *v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Plausibility requires "more than

2    a sheer possibility that a defendant has acted unlawfully." *Id.*  Furthermore, under

3    Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff fails to establish

4    subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

5         On a motion to dismiss, a court reviews the complaint, matters that are properly

6    judicially noticeable, and documents "not physically attached" but whose authenticity

7    is "'not contested.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

8    (citations omitted).  While a plaintiff's factual allegations must be accepted as true, a

9    court need not credit allegations that are "merely conclusory, unwarranted deductions

10   of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

11   1055 (9th Cir. 2008) (citations omitted).  A court is not required to "'assume the truth

12   of legal conclusions merely because they are cast in the form of factual allegations.'"

13   *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).

14        State consumer protection claims, such as claims under the CLRA, UCL, and

15   FAL, "that sound in fraud are subject to the heightened pleading requirements of

16   Federal Rule of Civil Procedure 9(b)."  *In re Apple Inc. Device Performance Litig.*,

17   347 F. Supp. 3d 434, 443 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp.

18   1155 (N.D. Cal. 2019); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–

19   04 (9th Cir. 2003).   Rule 9(b) requires a complaint "state with particularity the

20   circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  These must be "specific

21   enough to give defendants notice of the particular misconduct . . . so that they can

22   defend against the charge and not just deny that they have done anything wrong."

23   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).

24   Therefore, allegations of fraud must set forth "'the who, what, when, where, and how'

25   of the misconduct charged."  *Vess*, 317 F.3d at 1106 (citations omitted).

26

27

28

1

## IV.  ARGUMENT

2

### A.  Plaintiff Lacks Article III Standing.

3      Plaintiff fails to establish she has standing to bring this action.  Article III

4  requires that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly

5  traceable to the challenged conduct of the defendant, and (3) that is likely to be

6  redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

7  (2016), *as revised* (May 24, 2016).  In order to establish injury-in-fact, a plaintiff must

8  show that she has suffered "an invasion of a legally protected interest," which is

9  "concrete and particularized," and "actual or imminent, not 'conjectural' or

10  'hypothetical.'" *Lujan*, 504 U.S. at 560 (quotations and citations omitted).  The party

11  seeking to establish federal jurisdiction "bears the burden of showing that [s]he has

12  standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488,

13  493 (2009).  Plaintiff has not met this standard.

14

### 1.  *Plaintiff Fails to Identify a Particularized Injury.*

15      Plaintiff carefully avoids alleging that any Products she purchased for use

16  contained trace metals. Instead, she repeatedly alleges that the Products "risked"

17  containing heavy metals. *See, e.g.*, FAC ¶¶ 31, 36–37.  Specifically, she states that

18  "Plaintiff's counsel had Defendant's Prenatal Vitamins tested. . . ." *Id*. at ¶ 112.  In

19  trace chemical product cases, a plaintiff must not only show concrete injury—possible

20  economic damages in this instance—but particularized injury, *i.e.*, that she actually

21  purchased a product and risked being exposed to the chemical.  Without doing so, a

22  plaintiff lacks standing.  For example, in *Schloegel v. Edgewell Pers. Care Co.*, the

23  court dismissed the plaintiff's complaint because she failed to allege that any

24  sunscreen product plaintiff purchased contained benzene.  No. 4:21-CV-00631-DGK,

25  2022 WL 808694, at *2–3 (W.D. Mo. Mar. 16, 2022).  Likewise, in *Doss v. Gen.*

26  *Mills, Inc.*, the court dismissed the case, which was premised on the trace level of a

27  pesticide in Honey Nut Cheerios, concluding that:

28

> Doss does not allege her health has suffered as a result of eating Cheerios.
> Instead, she says her harm is "economic loss" resulting from buying a

> product under allegedly false pretenses. Doss does not, however, even allege that the Cheerios she herself bought actually contain any glyphosate—just that some Cheerios that have been tested do. In fact, Doss even hedges her bets, saying that the Cheerios she herself purchased either "contained or *could contain* glyphosate."

No. 18-61924-CIV, 2019 WL 7946028, at *2–3 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) (emphasis in original); *see also Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (holding plaintiff lacked standing for alleged arsenic in bottled water because he did not allege that the water *he* purchased contained arsenic); *Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *2–3 (N.D. Cal. May 5, 2010) (holding plaintiff lacked standing to assert a "speculative, hypothetical" theory of "economic injury" alleging that pot pies only "might contain harmful pathogens"). Plaintiff fails to allege that any Products she purchased for her intended use contained trace metals, and Paragraph 112 leaves no doubt that *her counsel* purchased and tested Products and reported the results.  She alleges only a non-particularized possibility the Products *may* contain Heavy Metals.  This is not enough for Article III standing.

## 2.    *Plaintiff Fails to Establish Economic, Much Less Physical, Injury.*

Plaintiff also fails to establish any concrete injury-in-fact.  Her purchasing remorse does not confer Article III standing.  As the court explained in *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018):

> The only injury that Estrada alleges is purely economic in nature—that is, that she known more about Baby Powder, she would not have purchased it in the first place. But Estrada's wish to be reimbursed for a functional product that she has already consumed without incident does not itself constitute an economic injury within the meaning of Article III.

*Id*. at 293.  Similarly, in case about lead in lipstick, the plaintiff conceded she had not suffered any adverse health effects and therefore "asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing."  *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010); *see also In re Fruit Juice Prod. Mktg. & Sales*

1     *Pracs. Litig.*,  831 F. Supp. 2d 507, 512 (D. Mass. 2011) (holding plaintiffs lacked

2     standing in a trace level lead in juice case, noting "[p]laintiffs paid for fruit juice, and

3     they received fruit juice, which they consumed without suffering harm. The products

4     have not been recalled, have not caused any reported injuries, and do not fail to

5     comply with any federal standards. The products had no diminished value due to the

6     presence of the lead.").

7         Likewise, in the Ninth Circuit, to establish an economic injury under a benefit

8     of the bargain theory, a plaintiff must "alleg[e] that she bargained for a product worth

9     a given value but received a product worth less than that value." *McGee v. S-L Snacks*

10    *Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020) (quotations omitted).   Under an

11    overpayment theory of economic injury, "a plaintiff can satisfy the injury in fact

12    requirement by showing that she has paid more for a product than she otherwise would

13    have due to a defendant's false representations about the product." *Id.* at 706.  In

14    *McGee*, the Ninth Circuit upheld a dismissal, holding that the plaintiff did not

15    sufficiently allege economic injury because the inclusion of trans fat in the product

16    was disclosed on the label, and part of the benefit of the bargain and health risks were

17    known to consumers. *Id.* at 705–10.

18         Here, Plaintiff's alleged injury is purchasing remorse, not an injury in fact.

19    Plaintiff purchased and used the Products, and makes no allegations that they did not

20    perform as advertised.  Instead, she only alleges economic injury due to the *potential*

21    presence of trace metals.  This alleged economic injury fails to confer standing

22    because Plaintiff identifies no marketing statement that makes or implies a "Heavy

23    Metal free" claim, and therefore such a promise was not included in the benefit of the

24    bargain.  As such, Plaintiff has not been economically injured.

25         Further, Plaintiff has not alleged physical injury from the Products.  She has

26    not even alleged that she personally purchased Products containing trace metals,

27    much less sufficiently alleged the Products were unsafe or dangerous to consume. [2]

28

---

[2] "A carcinogenic or other toxic ingestion or exposure, without more, does not provide a basis for fearing future physical injury or illness which the law is prepared to

"A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quotations omitted). Plaintiff has alleged neither.

Plaintiff attempts to establish standing based on the increased risk of adverse health consequences to infants and children as a result of the mother's consumption of the Products, but she fails to do so. In *Kimca v. Sprouts Foods, Inc.*, a case about trace metals in baby food, the court found plaintiffs lacked standing when they failed to "support the conclusion that the consumption of these products caused a substantially increased risk of future harm to their children." No. CV 21-12977 (SRC), 2022 WL 1213488, at *6 (D.N.J. Apr. 25, 2022). The court reasoned that "courts have declined to use similar cross-product comparisons to establish injury at the motion to dismiss stage" and therefore rejected applying to baby food certain borrowed FDA standards as to certain trace metals in bottled water and drinking water. *Id.* at *6–7. Here, Plaintiff cites the same FDA standards, and, like the *Kimca* plaintiffs, fails to justify *why* the guideline trace metal levels of drinking water, bottled water, apple juice, or infant rice cereals are applicable to prenatal vitamins. *See, e.g.*, FAC ¶¶ 78–79.

Moreover, as a separate basis for dismissal, the *Kimca* court concluded plaintiffs lacked standing because, although they may have sufficiently alleged the products contained heavy metals and that elevated levels can be unsafe, plaintiffs "do not connect these two allegations by establishing that the levels of heavy metals in the [products at issue] are unsafe." *Id.* at *8. Here, assuming *arguendo* Plaintiff's allegations that the Products contain trace amounts of heavy metals and that elevated levels can be unsafe, Plaintiff fails to plausibly connect those allegations to Plaintiff's

recognize as reasonable. The fact that one is aware that he or she has ingested or been otherwise exposed to a carcinogen or other toxin, without any regard to the nature, magnitude and proportion of the exposure or its likely consequences, provides no meaningful basis upon which to evaluate the reasonableness of one's fear." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 989 (1993).

10

1   theory that the levels detected are indeed unsafe.  In fact, the FDA study Plaintiff cites
2   on lead in women's and children's vitamins, including prenatal vitamins, directly
3   contradicts Plaintiff's claim that "no level of Heavy Metals is safe."  FAC ¶¶ 89, 117;
4   *see also* RJN, Ex. D.  The study found, based on FDA's thorough testing, that the
5   median vitamin had a lead level of 0.160 mg/kg (ppm), which was well below the
6   "***safe/tolerable exposure levels*** that have been developed for the particular age and
7   sex groups."  RJN, Ex. D, p. 6896 (emphasis added).  The "highest levels" of lead in
8   the Products according to Plaintiff are 0.104 mg/kg and 0.088 mg/kg (ppm), which
9   are significantly lower than the median level of 0.160 mg/kg (ppm) found in vitamins
10  by the FDA—a level which the FDA classified as "extremely low."  *Id*.  This amounts
11  to an admission:  Plaintiff cannot show present or future harm in light of FDA's
12  findings demonstrating the Products have significantly lower lead content than most
13  other vitamins tested by the FDA.  As such, Plaintiff's allegations as to injury are pure
14  speculation and insufficient to establish standing.

15      **B.   Plaintiff States Only Claims that are Derivative of an Unalleged
16           Proposition 65 Claim, But Her Test Results Demonstrate that No
             Warnings Are Required.**

17      The FAC must be dismissed because Plaintiff alleges an unspoken Proposition
18  65 claim, but has not followed the mandatory pre-suit notice process.  Furthermore,
19  the levels of trace metals alleged in the Products, which fall under Proposition 65's
20  "safe harbor" exposure levels, do not violate that law.  "When specific legislation
21  provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to
22  assault that harbor."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal.4th
23  163, 182 (1999).  The purpose of the doctrine is to prevent plaintiffs from asking a
24  court or jury to second-guess the considered judgments of other branches of
25  government.  *Id.* ("If the Legislature has permitted certain conduct or considered a
26  situation and concluded no action should lie, courts may not override that
27  determination.").  Courts have consistently refused to allow UCL claims where the
28  challenged conduct is permitted by law.  *See, e.g.*, *Davis v. HSBC Bank* , 691 F.3d

1152, 1164–65 (9th Cir. 2012) (finding UCL claim barred for conduct authorized by Truth in Lending Act); *Hauk v. JP Morgan Chase Bank U.S.*, 552 F.3d 1114, 1122 (9th Cir. 2009) (same).   In *In re Vaccine Cases*, the Court applied *Cel-Tech*'s reasoning in the Proposition 65 context to determine that plaintiffs cannot evade Proposition 65 pre-suit notice requirements by casting their case as one for unfair competition.   134 Cal. App. 4th 438, 458 (2005).   Since *Vaccine Cases*, a number of courts have held that claims brought under the UCL, CLRA, and FAL, but premised on failure to warn for Proposition 65 substances, are barred for lack of meeting pre-suit requirements.   The Court need do nothing more than apply that precedent here to dismiss the FAC in its entirety.

### 1. Plaintiff's FAC States an Implicit Proposition 65 Claim and Must Be Dismissed for Lack of a Mandatory Pre-Suit Proposition 65 Notice.

Plaintiff's claim is based upon a failure to disclose or warn for potential exposures to lead, cadmium, arsenic, and mercury, each of which is listed under Proposition 65.   While the FAC does not directly state a Proposition 65 cause of action, it is entirely derivative of an unspoken Proposition 65 claim and pleaded in a manner intended to avoid Proposition 65 pre-suit notice requirements and application of safe harbor exposure levels.   Courts uniformly reject such attempts.

A plaintiff may not artfully plead around Proposition 65 by attempting to state derivative causes of actions under statutes like the CLRA, UCL, and FAL, as "any duty is inextricably bound up with Proposition 65 because it regulates the level of listed chemicals that can exist in a product without triggering a duty to disclose." *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-cv-1345 DMS (AGS), 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020).   "To determine whether claims are attempts to 'plead around' Proposition 65, courts assess 'whether the claims asserted in the initial complaint . . . are entirely derivative of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65.'" *Id.* at *4 (citing *Sciortino*, 108 F. Supp. at 792 ("Dismissal with prejudice would be proper, because improper notice cannot be retroactively cured.")).   In *Gutierrez*, the plaintiffs

alleged defendants failed to disclose the presence of asbestos and other chemicals like lead and arsenic in talc-based personal care products, alleging this failure to warn was actionable under the CLRA, UCL, and FAL. *Id.* at *1–2. As such, plaintiffs argued they did not need to issue a pre-suit notice because they were pursing claims "completely independent" from Proposition 65, as they did not allege a Proposition 65 cause of action and specifically disclaimed reliance on Proposition 65. *Id.* at *4. The court dismissed the complaint, holding that because plaintiffs' claims *concerned* the failure to warn for Proposition 65 listed chemicals, those claims were entirely derivative of an unspoken Proposition 65 claim and "inextricably bound up with Proposition 65 because it regulates the level of listed chemicals that can exist in a product without triggering a duty to disclose." *Id.* at *4–5.

Likewise, in *Hanna v. Walmart Inc.*, the plaintiff alleged a herbicide required a cancer warning due the presence of glyphosate, a chemical listed under Proposition 65 as a carcinogen, but specifically disclaimed reliance on Proposition 65. No. 520CV01075MCSSHK, 2020 WL 7345680, at *4 (C.D. Cal. Nov. 4, 2020). The court dismissed, holding the "UCL claim is viewed by this Court as an attempt 'to plead around a claim that would be barred under Proposition 65.'" *Id.* (quoting *Harris v. R.J. Reynolds Vapor Co.*, No. 15-CV-04075-JD, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016) (dismissing a complaint for failure to warn for two listed Proposition 65 substances, as derivative of an unspoken Proposition 65 claim).

Finally, in *Sciortino*, two named plaintiffs asserted claims under the CLRA, UCL and FAL, among others. 108 F. Supp. 3d at 791–92. The first alleged a failure to warn that the product contained a Proposition 65 listed chemical. *Id.* at 792. The court found the "gravamen of . . . [the] initial complaint was a Proposition 65 claim seeking to vindicate a right created by Proposition 65" and "all his claims were derivative of Proposition 65." *Id.* As such, the court did not allow a retroactive Proposition 65 notice to cure the notice deficiency, and dismissed the complaint. *Id.* at 793–94. In contrast, a second plaintiff's complaint was based on "separate

misrepresentation" concerning the amounts of a listed chemical in the product. *Id.* at 794. The court permitted the case to proceed because it did not plead a failure to warn case and instead pointed to specific representations concerning the levels of the chemical in the product. *Id.*

Here, the FAC repeatedly and pervasively states that it is based on a failure to warn for heavy metals, each which is listed under Proposition 65. In fact, Section III of the FAC leaves no doubt: "DEFENDANT'S OMISSIONS ON THE PACKAGING OF ITS PRENATAL VITAMINS IS THE BASIS FOR THIS ACTION." Plaintiff further repeats over and over that her action is based on failure to warn. *See* FAC ¶ 9 ("Nowhere on the Prenatal Vitamins' packaging is it disclosed that they contain, or risk containing, Heavy Metals."); *id.* at ¶ 10 ("The Prenatal Vitamins' packaging does not include any type of disclaimer or disclosure regarding the presence or risk of Heavy Metals that would inform consumers of their presence."); *see also id.* at ¶¶ 19–22, 34, 36, 39, 66, 108–11, 119, 122, 125, 128, 132, 135, 137, 139, 142, 151, 164–65, 177, 188, 219–20, 225, 227. This Court should take Plaintiff at her word—her claim is fully premised on failure to warn for lead, arsenic, cadmium, and mercury.

Proposition 65 has stringent pre-suit notice and certificate of merit requirements. Cal. Health & Safety Code § 25249.7(d)(1). The notice and certificate of merit are a mandatory pre-condition to bringing a failure to warn claim for listed substances. *See, e.g.*, *Sciortino*, 108 F. Supp.3d at 790. The notice requirement is an "absolute barrier[ ] to relief" and the notice requirement may not be plead around by "relabeling the nature of the action as one brought under" consumer protection laws. *Id*. A complaint cannot be amended to cure this defect. *Physicians Comm. for Responsible Med. v. KFC Corp.*, 224 Cal. App. 4th 166, 183 (2014). It is undisputed that Plaintiff has not issued a pre-suit Proposition 65 notice. Therefore, Plaintiff's FAC must be dismissed with prejudice.

### 2. Even If Plaintiff Had Met Proposition 65 Pre-Suit Requirements, Her Pleaded Test Results Show the Products Do Not Require a Warning.

Even if Plaintiff had met Proposition 65 pre-suit requirements, the Heavy Metal levels specifically alleged by Plaintiff conclusively demonstrate that the Products are below Proposition 65 safe harbor exposure limits. "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182. Plaintiff pleaded her counsel's "highest levels" of the heavy metals, meaning that these results are not representative of the entire range of levels (not disclosed in the FAC) that Plaintiff's counsel measured in its testing. But even if taken at face value, the results show that even the Products with the "highest levels" of these trace contaminants *comply with Proposition 65 safe harbor exposure levels*. As a result, a failure to warn claim cannot lie under Proposition 65 or the general consumer protection laws asserted by Plaintiff.

To calculate whether a warning is required under Proposition 65, one must determine (1) the level of exposure to the chemical at issue from average use of the product, and (2) compare that average exposure level to the safe harbor NSRL or MADL. *See* Cal. Code Regs. tit. 27, § 25721, § 25821. To calculate the level of exposure, conservatively one can simply assume the serving size on the Product label is consumed every day at a full serving, and multiply the serving size by the highest test result. A model calculation is:

$$\text{heavy metal (ppb) x serving size (kilograms)} = \text{exposure per serving (micrograms/day)}$$

Notably, this formula calculates the most conservative exposure level and does not follow the more defense-favorable case law that would allow averaging of test results and frequency of consumption over time.[3] Nevertheless, to demonstrate *Cal-*

---

[3] For example, in *Envtl. L. Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307 (2015), *as modified on denial of reh'g* (Apr. 16, 2015), the court held that the level of exposure to lead should be calculated based on frequency of consumption over time, and not simply assuming a full serving every day, among other things. As a result, the calculation stated above is overly conservative because it is based on the assumption that the Product is consumed, on average, at the recommended label amount on every single day by every single consumer.

1    *Tech* bars enforcement on the basis of Proposition 65's safe harbor exposure levels,

2    Defendant uses this conservative formula for each Heavy Metal.[4]

3        **Lead** has a safe harbor MADL of 0.5 micrograms a day and NSRL of 15

4    micrograms a day.  Cal. Code Regs. tit. 27 § 25705, § 25805.  Plaintiff alleges the

5    highest level of lead concentration to be 104.26 ppb and 87.63 ppb.  FAC ¶ 115.  The

6    labeled serving sizes for the two Products are 3.834 grams and 3 grams.  RJN, Ex. G,

7    I; Declaration of Samantha Gilson ("Gilson Decl.") (ECF No. 40-1), ¶¶ 6–7. The

8    formula below demonstrates the exposure calculation, with each exposure level being

9    below the MADL and NSRL:

10        Source of Life Prenatal: *0.003834 kg x 104.26 ppb = 0.40 micrograms a day*

11        Source of Life Garden Prenatal: *0.003 kg x 87.63 ppb = 0.26 micrograms a day*

12        **Cadmium** is listed as a reproductive toxicant with a safe harbor MADL of 4.1

13    micrograms a day.[5] Cal. Code Regs. tit. 27, § 25805. Plaintiff alleges the "highest

14    level" of cadmium measured was 96.43 ppb. FAC ¶ 114. The labeled serving size for

15    the Product is 3.834 grams. RJN, Ex G; Gilson Decl. ¶ 5.  The formula below

16    demonstrates the exposure calculation, with the exposure level being more than 10

17    times below the MADL:

18        Source of Life: *0.003834 kg daily serving x 96.43 ppb = .35 micrograms a day*

19        **Inorganic arsenic compounds** is listed as a carcinogen under Proposition 65

20    with an NSRL of 10 micrograms per day. Cal. Code Regs. tit. 27, § 25705.  Plaintiff

21    alleges the "highest levels" of arsenic measured were 552.73 ppb and 540.01 ppb.

22    FAC ¶ 113.  The labeled serving size on the Products are 3.834 grams and 4.914

23    grams.  RJN, Exs. E–G; Gilson Decl. ¶¶ 5, 7. The formula below demonstrates the

24    exposure calculation, with the exposure levels being multiples below the NSRL:

25        Source of Life Prenatal: *0.003834 kg x 552.73 ppb = 2.12 micrograms a day*

26        Ultra Prenatal: *0.004914 kg x 540.01 ppb = 2.65 micrograms a day*

27

28    ---
[4] For the Court's convenience, a table of these results is presented in the Appendix.
[5] "Cadmium and cadmium compounds" is listed as a carcinogen under Proposition 65, but the agency has decided it does not cause cancer via ingestion.  Cal. Code Regs. tit. 27, § 25707(b).

16

**Mercury** is listed as mercury and mercury compounds (reproductive toxicant) and methylmercury and methylmercury compounds (carcinogen).  No safe harbor levels have been promulgated by agency.  However, methylmercury, the more toxic of the two substances, has a court-adjudicated MADL of 0.3 micrograms a day.  *See People ex rel. Brown v. Tri-Union Seafoods, LLC*, 171 Cal. App. 4th 1549, 1561 (2009).  Plaintiff alleges the "highest level" of mercury measured was 36.86 ppb.  FAC ¶ 116.  The relevant serving size is 3.834 grams.  RJN, Ex. G; Gilson Decl. ¶ 5.  The formula below demonstrates the exposure calculation, with the exposure level being less than half of the adjudicated MADL:

Source of Life Prenatal: *0.003834 kg x 36.86 ppb = 0.14 micrograms a day*

Because each of the highest tests from Plaintiff are below the safe harbor levels, the Products do not require a warning under Proposition 65.  As such, Plaintiff's entire case fails under *Cel-Tech*.

### 3.  *Plaintiff's FAC Fails to Allege Affirmative Representations Contrary to the Presence of Heavy Metals.*

Even if Proposition 65 did not bar this failure-to-warn FAC, which it does, "'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*.'"  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in original).  The presence of these trace levels of Heavy Metals, under the circumstances, is not a material fact subject to disclosure.  There "'are four circumstances in which failure to disclose may constitute actionable fraud: "'(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.'"  *LiMandri v. Judkins*, 52 Cal. App.4th 326, 336 (1997) (citations omitted).

Plaintiff is not in a fiduciary relationship with Defendant; Plaintiff merely purchased products manufactured by Defendant.  Moreover, Defendant does not have

17

exclusive knowledge of Heavy Metal content in the Products given the widely known ubiquity of Heavy Metals in all foods, including vitamins, as continually referenced by the FDA.  For example, the FDA's Toxic Elements Working Group specifically monitors exposure to heavy metals in foods and dietary supplements.  RJN, Ex. A. The presence of Heavy Metals in vitamins is also well-established, as shown by more than a decade of public litigation under Proposition 65 and corresponding consent judgments resolving major portions of that litigation (including, as discussed below, the Products at issue in the FAC).

Furthermore, there are no plausible allegations regarding active concealment or suppression of material facts.  Nor are there any partial representations or representations contrary to the possible presence of Heavy Metals.  Most fundamentally, as discussed *supra*, even based on Plaintiff's test results, the Products do not require Proposition 65 warnings for Heavy Metals.  A chemical exposure at a level that does not require a warning under Proposition 65 cannot be a "'material' fact subject to disclosure."  *See Gutierrez*, 2020 WL 6106813, at *5–6.

## C.   Plaintiff's Lead Claims are Barred by Res Judicata.

The claims alleged by Plaintiff as to lead have already been litigated and resolved through the Consent Judgment in *People v. 21st Century Healthcare, Inc., et al.*, Alameda Superior Court, No. RG08426937 (Nov. 16, 2012) ("Consent Judgment"), and are therefore barred.  RJN, Ex. C. Under the doctrine of *res judicata*, a prior judgment has preclusive effect on a subsequent action if:

> 1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication.

*Consumer Advoc. Grp., Inc. v. ExxonMobil*, 168 Cal. App. 4th 675, 685–86 (2008).

*First*, the issues in Plaintiff's FAC are identical to those previously adjudicated in the case leading up to the Consent Judgment. The cause of action is defined by the "primary right" theory. *Id.* at 686 (citing *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. 4th 1053, 1067 (1998)).  Here, Plaintiff seeks

damages, civil penalties and injunctive relief for alleged trace amounts of lead in the Products. This is the same relief gained by the Attorney General of California, based on the same primary right, in the prior case.  RJN, Ex. C, at ¶ 1.  Further, Natural Organics *is* a settling defendant in the Consent Judgment.

The Consent Judgment expressly covers all of the Products at issue in Plaintiff's FAC as to lead. RJN, Ex. C, at Exhibit 1.  Specifically, that Defendant "shall be permanently enjoined and restrained . . . from manufacturing for sale in California, Distributing into California, or directly selling to a consumer in California any Covered Product for which the maximum daily dose recommended on the label contains more than 0.5 micrograms of lead, after subtracting out the amount of lead deemed "naturally occurring" for each ingredient." RJN, Ex. C, at ¶ 2.1. The Products are in compliance with this standard, without accounting for any natural occurrence, according to Plaintiff's alleged lead levels, discussed *infra* Section IV.B.2.

The Consent Judgment also includes a comprehensive structure for enforcement of the reformulation standard.  RJN, Ex. C, at ¶ 2.  Only the plaintiff to the prior Consent Judgment—the Attorney General—is entitled to enforce its terms, and any alleged violation must be brought pursuant to its terms.  RJN, Ex. C, at ¶ 4. The Consent Judgment explicitly constitutes "a full, final, and binding resolution between the People and Defendant . . . of any violation of Proposition 65 [as to lead content] or its implementing regulations, any acts of unfair competition, as defined by Business and Professions Code sections 17200, or any violation of any other statutory or common law."  RJN, Ex. C, at ¶ 5.  Further, the Consent Judgment releases and forever discharges, in the public interest, "any violations . . . that have been or could have been asserted in the Action for failure to provide clear and reasonable warnings required by Proposition 65 of exposure to lead from use of the Release Product."  RJN, Ex. C, at ¶ 5.  Accordingly, the issues decided in the Consent Judgment are identical to what is at issue in the FAC here, and thus the first element of *res judicata* is met.

*Second*, "[a] court-approved settlement acts as a final judgment on the merits." *Consumer Advocacy*, 168 Cal. App. 4th at 694 (finding a Proposition 65 consent judgment as binding to any subsequent plaintiff).  Here, the Consent Judgment was judicially approved in November 2012, and not appealed.  By its own terms, the Consent Judgment was "a full, *final*, and binding resolution . . . ."  RJN, Ex. C, at ¶ 5 (emphasis added).  As such, the second element of *res judicata* is satisfied.

*Finally*, *res judicata* bars named parties and those in privity with named parties from relitigating the same action.  *Consumer Advocacy*, 168 Cal. App. 4th at 689.  Privity refers to "such an identification in interest of one person with another as to represent the same legal rights."  *Id.*  "The determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate."  *Id.*  The Plaintiff here is in privity with the Attorney General.  The Consent Judgment was brought "by the Attorney General in the name of the People of the State of California."  RJN, Ex. C, at ¶ 1.2.  Because each element of *res judicata* is satisfied, Plaintiff's lead claim is barred.

**D.  Reasonable Consumers Cannot Be Deceived by the Challenged Representations, and Plaintiff Does Not Allege Reliance on Them.**

As the FAC makes clear, Plaintiff's theory is one of omission.  "Defendant's omission on the packaging of its prenatal vitamins is the basis for this action."  FAC, at 7.  Although she references the alleged omission over 20 times throughout the FAC, she tries to bolster her theory by specifying certain express representations.  But none of these is inconsistent with the presence of heavy metals, and all are non-actionable and at best puffery.

The standards for evaluating such claims are clear:  "Under the consumer protection laws of California . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (citations omitted).  Deception is "more than a mere possibility that the advertisement might conceivably be misunderstood by some few customers viewing it in an

20

1 unreasonable manner.  Rather, . . . it is probable that a significant portion of the

2 general consuming public or of targeted consumers, acting reasonably in the

3 circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App.4th

4 496, 508 (2003); *accord Tran v. Sioux Honey Ass'n Cooperative*, 471 F. Supp.3d

5 1019, 1025 (C.D. Cal. 2020) ("The relevant consumer is 'the ordinary consumer' . . .

6 not the 'least sophisticated consumer.'") (citations omitted).   "[A] plaintiff's

7 unreasonable assumptions about a product's label will not suffice." *Moore*, 4 F.4th

8 at 882 (citations omitted)).  "[W]here a court can conclude as a matter of law that

9 members of the public are not likely to be deceived by the product packaging,

10 dismissal is appropriate." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010

11 WL 2673860, at *3 (N.D. Cal. July 2, 2010).

12         Plaintiff's claims cannot meet these standards.  Notably, the representations

13 identified by Plaintiff are wholly *unrelated to heavy metals*.  Plaintiff asserts the brand

14 name "NaturesPlus" "reflect[s] and impl[ies] that the Products are natural," and that

15 the pictures of fruits and vegetables included on certain labels indicate they are

16 nutritious.  FAC ¶¶ 42–43.  But Natural Organics only states that the vitamins are a

17 "natural supplement for all phases of pregnancy" and "high potency."  *Id.* at ¶¶ 44–

18 45.  Further, Natural Organics' website only states: (1) it is "bringing you high-quality

19 products with the guaranteed potency you deserve"; (2) one of its "five core values"

20 is that it "continually strive[s] to create innovative, cutting-edge products that not only

21 meet our customers' needs, but far exceed them"; (3) "For nearly 50 years, we have

22 cultivated trust by paying authentic attention to quality: Guaranteeing that every

23 NaturesPlus product contains everything we say it does—every time"; (4) it is

24 "committed to bringing consumers smart, high-quality formulations"; (5) the

25 Products are "[m]anufactured with LOVE"; (6) it "guarantees that our products will

26 live up to the quality you expect"; and (7) it takes customers "needs for reliable,

27 effective supplements seriously."  *Id.* at ¶¶ 46–50.

28

None of these statements imply that the Products are "free from" trace metals or even refers or have any connection to Heavy Metals. Plaintiff asserts in a conclusory fashion that the statements mean the Products are free of heavy metals, *see, e.g.*, *id.* at ¶¶ 63–66, but such an implication would be absurd, because trace amounts of heavy metals are ubiquitous and cannot be eliminated. The court in *Weaver v. Champion Petfoods USA Inc.*, for example, noted that "[a]ll . . . foods contain at least some tiny amount of heavy metals." No. 18-CV-1996-JPS, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019). Plaintiff also cites *eighteen sources* recognizing heavy metals are naturally occurring. *See* FAC ¶¶ 5, 14, 16, 71, 75–77, 81, 85, 86, 90–91, 94 (and corresponding footnotes).

Further, Plaintiff's assumptions about the Products based on images of fruits and vegetables has no significance, and no reasonable consumer would understand these images to mean Heavy Metal-free. *See Werbel*, 2010 WL 2673860, at *3; *McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("For one, the depiction of fruit on a product label is not a specific affirmation that a product[] contains *any fruit at all.*") (emphasis in original). This is because no reasonable consumer would understand any of the statements to imply the Products contain no trace metals. Plaintiff must show that the "words used on the labeling . . . comport[] with a 'reasonable consumer's understanding." *Gutierrez*, 2020 WL 6106813, at *9 (discussing *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 695–96 (9th Cir. 2016)). Plaintiff fails to show why terms such as "natural," "high potency," or "high quality" mean free from trace heavy metals, especially when such metals are naturally occurring.

The express statements are also non-actionable puffery. Whether a statement constitutes puffery "is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Industries, Inc. v. Ikon Off. Sol.,* 513 F.3d 1038, 1053 (9th Cir. 2008). "California courts have also held that 'mere puffing' cannot support liability under California consumer protection law." *Vitt v. Apple Computer, Inc.*, 469 F.

App'x. 605, 607 (9th Cir. 2012) (citation omitted).  "[A] statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'"  *Id.* (citations omitted); *see also Welk v. Beam Suntory Imp. Co.*, 124 F. Supp.3d 1039, 1044 (S.D. Cal. 2015) ("If Jim Beam uses the term 'handcrafted' to appeal to consumers' loose association of the term with 'higher quality manufacturing and high-end products,' . . . then it isn't 'specific and measurable.'") (citing *Vitt*, 469 F. App'x at 607).

In fact, all the alleged representations constitute non-actionable puffery. In *Vitt*, the statements "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop," "were held non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met.'"  *Vitt*, 469 F. App'x at 607. Every alleged statement is a subjective claim not relating to "specific or absolute characteristics" of the Products. These are generalized vague statements, about which there is nothing measurable or specific.  No reasonable consumer would rely on such representations. Therefore, even if Plaintiff's FAC is construed to have made affirmative representation claims, it should be dismissed as non-actionable puffery.

Moreover, under Federal Rule of Civil Procedure 9(b), Plaintiff has not sufficiently alleged reliance upon any of the identified representations.  Despite describing numerous references to "misleading" online representations, Plaintiff *never* claims that she actually relied on or viewed *any* of the *online* representations prior to making her purchasing decision. *See, e.g.*, FAC ¶ 138.  To the extent Plaintiff contends she has alleged reliance on statements on the Products' packaging or labeling, she does not specify *which* statements *she* viewed nor *which* statements actually induced *her* reliance.  "Merely supplying a list of advertisements and the misleading statements that [a defendant] made does not show which specific advertisement or statement that [a plaintiff] actually saw . . . [and] fall[s] short of the

1    specificity required by Rule 9(b)." *Gutierrez v. Johnson & Johnson Consumer, Inc.*,

2    No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021).

3           **E.    Plaintiff's Claim for Breach of Warranty Fails.**

4           A breach of the implied warranty of merchantability claim arises when the

5    challenged product does not conform to the promises or affirmations contained on the

6    container or label or is not fit for the ordinary purposes for which the goods are used.

7    *Hauter v. Zogarts*, 14 Cal. 3d 104, 117–18 (1975).  A plaintiff "must show that the

8    product 'did not possess even the most basic degree of fitness for ordinary use.'"

9    *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013); *see also*

10   Cal. Com. Code § 2314(2).  The defect must be such that the product is entirely unfit

11   for its ordinary purpose.  *Stearns v. Select Comfort Corp.*, No. 08-2746 JF, 2009 WL

12   1635931, at *8 (N.D. Cal. June 5, 2009).  A dietary supplement or drug is fit for its

13   ordinary purpose if it is fit for consumption.  *Hammock v. Nutramarks, Inc.*, No.

14   15CV2056 BTM (NLS), 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016).

15          Plaintiff does *not* claim that the Products are unsafe for human consumption.

16   FAC, at 23–24.  Plaintiff cannot do so.  The FDA Study found that most samples of

17   vitamins, including prenatal vitamins, were "extremely low in lead, with a median

18   value of 0.160 mg/kg and only four samples exceeding 1 mg/kg."  RJN, Ex. D, at

19   6895.  Plaintiff's FAC alleges the Products "contain, or have a risk of containing"

20   lead, with the "highest levels" amounting to no more than 0.10426 ppm and 0.08763

21   ppm.  FAC ¶¶ 85, 115.  These levels are less than 65% of the "extremely low" median

22   levels found in vitamins in the FDA study.  RJN, Ex. D, at 6895; *see also Pisano v.*

23   *American Leasing*, 146 Cal. App. 3d 194, 198 (1983) ("Crucial to the [implied

24   warranty] inquiry is whether the product conformed to the standard performance of

25   like products used in the trade.").

26          Furthermore, Plaintiff identifies *no* express promise or affirmation on the label

27   that Natural Organics has failed to keep.  Statements that are "at most misleading, but

28   not false" do not plausibly state a claim for breach of the implied warranty of

1    merchantability. *Fernandez v. Atkins Nutritionals, Inc.*, No. 317CV01628GPCWVG,
2    2018 WL 280028, at *13 (S.D. Cal. Jan. 3, 2018).   Accordingly, the Court should
3    dismiss Count IV of the FAC.  FAC ¶¶ 192–203.

        **F.   Plaintiff's Claim for Unjust Enrichment is Not Available.**

5        Plaintiff's FAC contains a standalone cause of action for "unjust enrichment."
6    FAC at ¶¶ 204–10.  It has long been established unjust enrichment is a remedy and
7    not a freestanding claim under California law.  *See, e.g.*, *In re Capacitors Antitrust
8    Litig.*, 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015).  As such, Count V should be
9    dismissed.

**V.   CONCLUSION**

11       For the foregoing reasons, Natural Organics respectfully requests that its
12   motion to dismiss be granted and the FAC be dismissed with prejudice.


14   Dated: July 8, 2022            ARNOLD & PORTER KAYE SCHOLER LLP




17                                  By: */s/ Trenton H. Norris*
18                                      Trenton H. Norris


19                                  *Attorney for Defendant*
20                                  NATURAL ORGANICS, INC.

# Appendix

**Table 1: Level of Heavy Metals Claimed to Be Present in Products**

| | First Amended Complaint | Lead | Mercury | Cadmium | Arsenic |
|---|---|---|---|---|---|
| **Source of Life® Prenatal Multivitamin Tablets** | ¶ 113–16 | 104.26 ppb | 36.86 ppb | 96.43 ppb | 552.73 ppb |
| **Ultra Prenatal® Multivitamin Tablets** | ¶ 113 | *n/a* | *n/a* | *n/a* | 540.01 ppb |
| **Source of Life® Garden Prenatal Multivitamin Tablets** | ¶ 115 | 87.63 ppb | *n/a* | *n/a* | *n/a* |

**Table 2: Exposure Calculations Based on Claimed Levels**

| | Serving | Lead | Mercury | Cadmium | Arsenic |
|---|---|---|---|---|---|
| **Source of Life® Prenatal Multivitamin Tablets** | 1.917g/tab x 2/day = **3.834 g/day** | 0.10426 µg/g x 3.834g = **0.40 µg/day** | 0.03686 µg/g x 3.834g = **0.14 µg/day** | 0.09643 µg/g x 3.834g = **0.36 µg/day** | 0.55273 µg/g x 3.834g = **2.12 µg/day** |
| **Ultra Prenatal® Multivitamin Tablets** | 2.457 g/tab x 2/day = **4.914 g/day** | n/a | n/a | n/a | 0.54001 µg/g x 4.914g = **2.65 µg/day** |
| **Source of Life® Garden Prenatal Multivitamin Tablets** | 1g/tab x 3/day = **3 g/day** | 0.08763 µg/g x 3g = **0.26 µg/day** | n/a | n/a | n/a |